241 S.E.2d 914 (1978)
Roger JONES
v.
WARDEN, WEST VIRGINIA PENITENTIARY.
No. 14010.
Supreme Court of Appeals of West Virginia.
January 17, 1978.
Concurring Opinions February 2, 1978.
Concurring Opinions February 24, 1978.
Hostler & Shinaberry, Sterl F. Shinaberry, Charleston, for relator.
Chauncey H. Browning, Jr., Atty. Gen., William D. Highland, Charleston, Gregory W. Bailey, Asst. Atty. Gen., Charleston, for respondent.
HARSHBARGER, Justice.
Relator, Roger Jones, seeks a writ of habeas corpus ad subjiciendum saying his conviction on November 29, 1972 for first degree murder, in the Circuit Court of McDowell County, is void as a result of this Court's ruling in State v. Pendry, W.Va., 227 S.E.2d 210 (1976), and the United States Supreme Court's ruling in Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and Hankerson v. North Carolina, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977).
The circuit court gave the following instruction, inter alia:

*915 The court instructs the jury that the law is that a man is taken to intend that which he does, or which is the natural and necessary consequences of his own act; and, therefore, if they believe from the evidence that Roger Dale Jones shot and killed the deceased, Crockett Boothe, by the deliberate use of an instrument likely to produce death, under the circumstances, then the presumption of law, arising in absence of proof to the contrary, is that he intended the consequences that resulted from said use of said deadly instrument.
This instruction is identical to one later declared constitutionally impermissible in State v. Pendry, wherein this Court applied the proscription of Mullaney v. Wilbur against shifting of the burden of proof in criminal trials from the state to the defendant through the use of presumptions.
We said in Pendry:
The instruction is further deficient under Mullaney in that it instructs the jury that there is a presumption of law which attaches to the deliberate use of a deadly weapon, namely, that the defendant intended the consequence that resulted from the use thereof which arises in the absence of proof to the contrary. This instruction told the jury that, when the State has introduced evidence showing Pendry's deliberate use of a deadly weapon, he was presumed to have intended the consequence in the absence of proof to the contrary. This would entitle the jury to accept proof beyond a reasonable doubt of the elements of intent and malice unless there was proof to the contrary. A presumption cannot relieve the State of proving those elements beyond a reasonable doubt. Further, this instruction seems to require Pendry to carry the burden of proving that he did not intend the consequences that resulted from using the deadly weapon. The instruction is therefore defective under traditional West Virginia principles of law and under the Mullaney doctrine, and if there were no other errors in the case, this instruction alone would require reversal. 227 S.E.2d at 223.
However, we concluded:
It is our view that the doctrine of Mullaney, insofar as it affects the burden of proof which is carried by a defendant and insofar as it affects the utilization of "presumptions" (more properly "inferences") in instructions, should be applied to all criminal cases now in trial or appellate process and should not otherwise be retroactive. (Emphasis added.) 227 S.E.2d at 224.
Jones was convicted before Mullaney and Pendry and his case was not at the time of Pendry, in the appeal state. Thus, the issue is whether we are required to overrule our proscription of the application of Pendry to cases in trial or appeal, and make it fully retroactive.
The question of the retroactivity to be accorded Mullaney is addressed by the United States Supreme Court in Hankerson v. North Carolina, supra, decided after Pendry. The Supreme Court of North Carolina had declined to apply Mullaney to trials occurring before the date on which it was decided, June 9, 1975. Hankerson's trial was on November 21, 1974, and he appealed, relying in part on the Mullaney decision.
The Supreme Court reversed the North Carolina Court's limited, prospective application of the Mullaney rule, reasoning:
In Mullaney v. Wilbur, as in In re Winship [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)], the Court held that due process requires the States in some circumstances to apply the reasonable-doubt standard of proof rather than some lesser standard under which an accused would more easily lose his liberty. In Mullaney, as in Winship, the rule was designed to diminish the probability that an innocent person would be convicted and thus to overcome an aspect of a criminal trial that "substantially impairs the truth-finding function."
. . . . .
. . . [W]e have said that the question of whether the purpose of a new *916 constitutional rule is to enhance the integrity of the factfinding process is a question of "degree," . . . and when the degree to which the rule enhances the integrity of the factfinding process is sufficiently small, we have looked to questions of reliance by the State on the old rule and the impact of the new rule on the administration of justice in deciding whether the new rule is to be applied retroactively. [Citations omitted.] But we have never deviated from the rule stated in Ivan V.[1] that "`[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule [is] given complete retroactive effect.'" [Citation omitted.] 432 U.S. at 242, 97 S.Ct. at 2344, 53 L.Ed.2d at 315, 316.
Respondent, in the action before us, argues that Hankerson may be interpreted restrictively to hold that Mullaney need only be applied to all cases involving criminal convictions not yet final at the time Hankerson was written. This harmonizes with and mandates no departure from the retroactivity provision set forth in Pendry. Respondent also notes footnote 8 in the Hankerson opinion[2] and argues that Jones did not interpose a Mullaney-based objection at trial and therefore cannot now raise a collateral attack on the bad instruction.
We believe Respondent's argument incisively ferrets out the ambiguities in the Hankerson opinion and may be a technically viable means of avoiding its full impact. But we decline to use that method of insulating past criminal convictions from the ambit of Mullaney, Pendry, and Hankerson. Safeguarding the integrity of the factfinding process must take priority over procedural concerns such as whether a trial lawyer could perceive future United States Supreme Court rulings and object to acts or instructions on the basis of constitutional infirmities yet unborn.[3]
The United States Supreme Court, in Mullaney and Hankerson, has said that the duty of the state to prove beyond a reasonable doubt every element of a crime is so significant and fundamental as to go to the very heart of the factfinding process; and that where that duty has been avoided, trials in which the avoidance occurred have been illegal. Other courts have found that where a constitutional right is determined to exist which is fundamental and essential to a fair trial, the decision applies retroactively and may be raised by habeas corpus or other special post-conviction proceedings by anyone who has likewise been unconstitutionally treated. See United States ex rel. Craig v. Myers, 329 F.2d 856 (3d Cir. 1964): United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir. 1964), cert. den. 337 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048. See also, Annot., 10 A.L.R.3d 1371 (1966).
We find that the spirit and language of Hankerson mandates that the Mullaney principle set forth in Pendry be fully retroactive. To the extent that Pendry limits its own retroactivity to those cases pending *917 appeal or in trial at the time it was decided, it is overruled.
Writ awarded.
NEELY, Justice, concurring:
I concur in the majority's holding that the rule of Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), incorporated in our case of State v. Pendry, W.Va., 227 S.E.2d 210 (1976), is fully and completely retroactive, extending even to permit collateral attack upon convictions not in the process of direct appellate review at the time Pendry or Mullaney were decided. This is justified exclusively because the United States Supreme Court has determined that the primary purpose of the new constitutional rule set forth in Mullaney is "to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." Hankerson v. North Carolina, 432 U.S. 233 at 243, 97 S.Ct. 2339 at 2345, 53 L.Ed.2d 306 (1977) quoting Ivan V. v. City of New York, 407 U.S. 203 at 204, 92 S.Ct. 1951, 32 L.Ed.2d 959 (1972). We are of course bound to follow the dictates of Hankerson in determining the retroactivity of Mullaney and Pendry in West Virginia.
Making Mullaney completely retroactive poses obvious problems, which Mr. Justice Powell noted in his concurring opinion filed in Hankerson:
[H]olding that a new constitutional principle is fully retroactive also may result in serious costs. Convictions long regarded as final must be reconsidered on collateral attack; frequently they must be overturned for reasons unrelated to the guilt or innocence of the prisoner, and in spite of good-faith adherence on the part of police, prosecutors and courts to what they understood to be acceptable procedures. Society suffers either the burden on judicial and prosecutorial resources entailed in retrial or the miscarriage of justice that occurs when a guilty offender is set free only because effective retrial is impossible.
Footnote 8 of the majority opinion in Hankerson suggests a solution to these problems for state courts:
Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the sort of burden-shifting presumptions involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions was as well settled in the States that have them as respondent asserts, then it is unlikely that prior to Mullaney many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on the validity of the instructions anyway. The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. See, e. g., Fed.Rule Crim.Proc. 30.
We, however, despite respondent's urging, have declined to resort to such a trap of procedure, the last avenue of escape for the third rate legal technician, even to achieve a laudatory result. It seems utterly nonsensical to deprive an innocent man of his liberty because his lawyer failed at his trial to make what would have been regarded, under the law of that time, as frivolous objections to instructions. I think it worth repeating in this context my statement that, "to the extent possible, under modern concepts of jurisprudence, legal contests should be devoid of those sporting characteristics which gave law the quality of a game of forfeits or trial by ambush." Rosier v. Garron, Inc., 156 W.Va. 861 at 875, 199 S.E.2d 50 at 58 (1973).
Another more sensible approach to the problems created by the retroactive application of Mullaney and Pendry is the use of the simple, but firmly established, principle that convictions need not be overturned where the constitutional error charged to have occurred is harmless beyond a reasonable doubt. State v. Blair, W.Va., 214 S.E.2d 330 (1975); State v. Thomas, W.Va., 203 S.E.2d 445 (1974). Certainly the harmless *918 error doctrine is as much a part of our State procedural law as the requirement that a defendant object to instructions. While the United States Supreme Court's suggestion that we impale malefactors on the petard of counsel's failure to object to the offending instruction is deceptively attractive, it is logically absurd because in this jurisdiction the defendant would probably be able to argue successfully ineffective assistance of counsel, particularly if it were determined that the truth-finding function of the trial had, in fact, been impaired.
Obviously the United States Supreme Court's deference to the application of state procedural law is a response to the prospect which Hankerson raises of having countless thousands of armed robbers, murderers, kidnappers, and other miscreants released. I do not find this circumspection misplaced.
While one must be in sympathy with the United States Supreme Court's constant striving to further human dignity and achieve fair administration in criminal justice throughout the nation; nonetheless, one must also be in sympathy with the average citizen whose life and property are constantly in jeopardy. As the poet Hart Crane once observed: "There is the world dimensional for those untwisted by the love of things irreconcilable." Nowhere are the complexities of our goals more obvious than in criminal law which has been used as a vehicle to effect far-reaching ends in the area of human and civil rights unrelated to the bare issue of convicting the guilty and freeing the innocent. It is because criminal law is concerned as much with the proper relationship between citizen and state as with guilt and innocence that society finds it difficult to accept the courts as engines of justice. Ordered liberty demands a high tolerance for paradox; Hart Crane's dilemma is not a daunting presence in Russian jurisprudence. The practical problem in so many constitutional questions which confront us is that when civil and human rights are involved we cannot accomplish all of society's goalschoice is thrust upon us; we are confronted by Hart Crane's quandary, and must accept the odium which is the consequence of making difficult choices.
However, this is not the case with the retroactive application of Mullaney and Pendry. Mullaney is a case about truth, and it is concerned exclusively with freeing the innocent. Unlike other areas of criminal procedure there is no ancillary societal benefit to be derived from freeing the guilty. This is not in any way a case about the proper relationship between the State's agents and private citizens where the sanction of denying the State a conviction is essential to protect human rights.
Accordingly I would argue that the courts of this State should vigorously apply our harmless error doctrine. Where it appears that the evidence is so overwhelmingly against the defendant; his defense is so utterly unrelated to any of the intricacies of the question of intent which is the subject of the offending instruction; and, the defective instruction was harmless error in all other regards beyond a reasonable doubt, the court should dismiss a collateral challenge to a prior conviction based on Mullaney grounds. As we have been authorized to apply state law by Hankerson's footnote 8 I would prefer to announce forthrightly what we are doing rather than to rely on procedural casuistry.
It is impossible to apply the harmless error doctrine in the case before us, because the pleadings, briefs and arguments were framed to raise solely the legal question of Mullaney's and Pendry's retroactivity. Accordingly, inasmuch as I concur in the legal principle announced today, I also concur in the result which necessarily follows from the principle's application to the limited record before us. In the future the correct course should be for the State to produce the entire record so that the trial court may apply the harmless error doctrine where appropriate.
I am authorized to say that Mr. Chief Justice CAPLAN joins in this concurrence.
MILLER, Justice, concurring:
I join in today's opinion and, since it does not address the question of the applicability of the doctrine of harmless error, I believe it advisable to comment on the doctrine, in view of Justice Neely's concurring opinion.
*919 Initially the doctrine of harmless constitutional error appears as an inviting panacea which would insulate the convictions of criminal defendants whose constitutional rights have been violated. If, as Justice Neely suggests, the harmless error test places primary emphasis on the amount of evidence properly admitted against a defendant, that is, overwhelming indication of guiltthen any constitutional error can be regarded as harmless.
Under the classic formulation of the doctrine, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967). In devising this harmless error standard, the Court followed the approach it conceived in Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), where it stated that the harmless error question must be answered by determining "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 375 U.S. at 86-87, 84 S.Ct. at 230, 11 L.Ed.2d at 173.
The Chapman Court noted that not all constitutional errors must be deemed harmful and therefore receive automatic reversal when found. It did, however, characterize the type of constitutional error that would be deemed harmless as "unimportant and insignificant." 386 U.S. at 22, 87 S.Ct. at 827, 17 L.Ed.2d at 709.
On the other hand, Chapman recognized "that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." 386 U.S. at 23, 87 S.Ct. at 827-28, 17 L.Ed.2d at 710. It then cited as illustrations Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (impartial judge).
Finally, Chapman requires "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710. Normally, the beneficiary of a constitutional error in a criminal case is the prosecution.
This Court has considered the doctrine of harmless constitutional error in several recent cases and there is no suggestion that our rule is different from the federal rule. State v. Boyd, W.Va., 233 S.E.2d 710 (1977); State ex rel. Grob v. Blair, W.Va., 214 S.E.2d 330 (1975); State v. Thomas, W.Va., 203 S.E.2d 445 (1974). Indeed, as Chapman teaches us, where the error involves federal constitutional rights the State must follow the federal harmless constitutional error standard. 386 U.S. at 21, 87 S.Ct. at 826, 17 L.Ed.2d at 709. The State, of course, is free to set a higher protective standard under its own Constitution, but it cannot diminish its constitutional standard where there is a parallel federal constitutional standard. Oregon v. Haas, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Sibron v. New York, 392 U.S. 40, 85 S.Ct. 1889, 20 L.Ed.2d 917 (1968).
With this background on the doctrine of harmless constitutional error, the question arises: Does it have any applicability to the present case?
It is of considerable interest that in Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), which was the progenitor of the rule that we today hold is retroactive, the two concurring Justices urged consideration of the doctrine of harmless constitutional error. The majority, however, refused to even discuss the doctrine in Mullaney.
Of even greater significance is the fact that in Hankerson v. North Carolina, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), which held the Mullaney rule to be retroactive, there was again no discussion by any of the Justices of the doctrine of harmless constitutional error.[1]
The challenged practice condemned in Mullaney "substantially impair[ed]" the *920 "truth finding function and so raise[d] serious questions about the accuracy of guilty verdicts in past trials." [Emphasis in original] 432 U.S. at 241, 97 S.Ct. at 2344, 53 L.Ed.2d at 316. See also, Ivan V. v. City of New York, 407 U.S. 203, 95 S.Ct. 1951, 32 L.Ed.2d 659 (1972).
Obviously where, as in Hankerson and here, the challenged practice has been found to seriously impair the truth finding functions, it could not be deemed harmless error under the Chapman test.
The rule that we today announce flows inexorably from the mandate announced in Hankerson by a unanimous United States Supreme Court. While I agree with my concurring brothers that Note 8 in Hankerson is chimerical, I do not agree that the doctrine of harmless constitutional error can be applied.
We adopted the Mullaney rule in State v. Pendry, W.Va., 227 S.E.2d 210 (1976). Today's holding is dictated by Hankerson. Neither Mullaney nor Hankerson considered the doctrine of harmless constitutional error for the simple reason that the error was so significant that the Court obviously felt it could not be harmless. We, therefore, cannot treat it as harmless.
I am authorized to state that Justice HARSHBARGER joins with me in this concurring opinion.
NOTES
[1] Ivan V. v. City of New York, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972).
[2] Footnote 8 of the Court's opinion states:

Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the sort of burden-shifting presumptions involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions was as well settled in the States that have them as respondent asserts, then it is unlikely that prior to Mullaney many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on the validity of the instructions anyway. The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. See, e. g., Fed.Rule Crim.Proc. 30.
[3] Neither party here addressed the effect of expending Pendry retroactively on the administration of justice in West Virginia. Thus, for this Court to deny complete retroactivity because of some sort of supposed bad impact upon the administration of justice would truly be theorization.
[1] Hankerson is also unusual, if not unique, because not a single Justice dissented.