LENNIS LEE ANGEL

*v.*

RICHARD MOHN, *Acting Superintendent,*

*West Virginia Penitentiary*

(No. 14272)

Decided March 20, 1979.

*George A. Daugherty* for petitioner.

*Chauncey H. Browning*, Attorney General, *Richard E. Hardison*, Deputy Attorney General, for defendant.

MILLER, JUSTICE:

In this appeal from the Circuit Court of Kanawha County upon the denial of petitioner's writ of habeas corpus, it is claimed that the Circuit Court erroneously applied the doctrine of harmless constitutional error.

The alleged underlying constitutional error was the giving of an instruction presuming first degree murder from the use of a deadly weapon.[1] In *Mullaney v. Wilbur*,

---

[1] "State's Instruction No. 4. The Court instructs the jury that a mortal wound given with a deadly weapon in the previous possession of the slayer without any, or upon very slight provocation, is prima facie, wilful, deliberate, and premeditated killing and throws upon the defendant the necessity of proving extenuating circum-

421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975), this type of instruction was held to be unconstitutional since it shifted the burden of proof of a key element of the crime from the state to the defendant, a position which this Court followed in *State v. Pendry,* ___ W.Va. ___, 227 S.E.2d 210 (1976).

The United States Supreme Court, following its unanimous holding in *Mullaney, supra,* decided *Hankerson v. North Carolina,* 432 U.S. 233, 53 L.Ed.2d 306, 97 S.Ct. 2339 (1977), where it found that the effect of a *Mullaney*-type instruction on the jury " '*substantially* impairs its truth-finding function and so raises *serious* questions about the accuracy of guilty verdicts in past trials. . . .' " [Emphasis in original] [432 U.S. at 243, 53 L.Ed.2d at 316, 97 S.Ct. at 2344, *quoting from Ivan V. v. City of New York,* 407 U.S. 203, 204, 32 L.Ed. 2d 659, 661, 92 S.Ct. 1951, 1952 (1972). It therefore decided to make its holding in *Mullaney* fully retroactive to all cases in which such instruction had been given.

This Court followed the mandate laid down in *Hankerson* in *Jones v. Warden, West Virginia Penitentiary,* ___ W.Va. ___, 241 S.E.2d 914 (1978), *cert. denied,* ___ U.S. ___, 58 L. Ed. 2d 125, 99 S.Ct. 107, a unanimous opinion on the issue of retroactivity. In a concurring opinion, two Justices took the position that in an appropriate case the doctrine of harmless constitutional error might be applied to avoid granting relief. They did find in *Jones* that it "is impossible to apply the harmless error doctrine in the case before us. . . ." [241 S.E.2d at 918]

In an additional concurring opinion, two Justices took the position that the doctrine of harmless error could not apply to a *Mullaney-Pendry* instruction. This was based on the reason that the doctrine of harmless constitutional error rests upon a finding that " 'the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt.' *Chapman v. Cali-*

---

stances and unless he proves such extenuating circumstances or the circumstances appear from the case made by the State, he is guilty of murder in the first degree."

*fornia*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967)." [241 S.E.2d at 919]. They asserted such declaration could not be made since, under *Mullaney* and *Hankerson*, the Court had stated as a matter of law that the constitutionally condemned instruction substantially impaired or cast serious questions upon the truth-finding function represented by the jury's guilty verdict.

In the present case, the lower court reasoned that since this Court appeared to be equally divided on the question of whether the doctrine of harmless constitutional error could apply to a *Mullaney-Pendry* instruction, it would utilize the doctrine.

We have applied *Jones'* retroactive principle in several subsequent cases where a *Mullaney-Pendry* instruction was involved. In each instance, the Court was unanimous in its holding on this point and no application was made of the doctrine of harmless constitutional error. *Edwards v. Leverette*, ____ W.Va. ____, ____ S.E.2d ____ (1979) (No. 14127) (Opinion by Chief Justice Caplan); *State v. Laws (State v. Davis)* ____ W.Va. ____, 251 S.E.2d 769 (1978) (Nos. 13886 & 13870) (Opinion by Justice Neely); *State v. Sanders*, ____ W.Va. ____, 242 S.E.2d 554 (1978) (Opinion by Justice McGraw); *Kosut v. Leverette*, ____ W.Va. ____, 242 S.E.2d 247 (1978) (Per Curiam).

In *State v. Kirtley*, ____ W.Va. ____, 252 S.E.2d 375 (1978) we recognized that a *Mullaney-Pendry* instruction given in a case which resulted in a verdict of involuntary manslaughter could be deemed harmless under the doctrine of harmless constitutional error, since it did not relate to the actual verdict. A similar rule was applied in a conviction for voluntary manslaughter in *State v. Mason*, ____ W.Va. ____, 249 S.E.2d 793 (1978).

In the present case, the jury verdict was for first degree murder without a recommendation of mercy, such that there is a direct correlation between the constitutionally defective instruction and the jury verdict.

Certainly the United States Supreme Court was aware of the doctrine of harmless constitutional error at the

time it decided *Mullaney,* since two Justices, in a concurring opinion, suggested consideration of this doctrine. The majority, however, refused to give any consideration to the doctrine. More importantly when *Hankerson* was decided by a unanimous Court, no suggestion was made that the constitutionally defective instruction could be treated as harmless constitutional error.[2]

It would be difficult, if not impossible, to fit the condemned *Mullaney-Pendry* instruction into the doctrine of harmless constitutional error, since such an instruction has been found as a matter of law in *Hankerson* to substantially impair the truth-finding function of the jury and raise *"serious* questions about the accuracy of guilty verdicts in past trials." [Emphasis in original] [432 U S. at 243, 53 L.Ed.2d at 316, 97 S.Ct. at 2344] The predicate for the doctrine of harmless constitutional error is that it can be stated "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 17 L.Ed.2d 705, 710, 87 S.Ct. 824, 828 (1967).

Obviously, an instructional error which unconstitutionally shifts the burden of proof of an essential element of the crime to the defendant, causing a serious question about the accuracy of the guilty verdict, is not an error that did not contribute to the guilty verdict. The *Mullaney-Hankerson* instructional error defined by its own terms precludes the application of the doctrine of harmless error.

We, therefore, conclude that the trial court erred in holding that the doctrine of harmless constitutional error operates to cure a constitutionally impermissible instruction which instructs the jury in a criminal case to

---

[2] The only suggestion for avoiding *Hankerson's* impact was the thought in Note 8 of *Hankerson,* that if no objection was made to the instruction the error might be waived under state practice—a position this Court unanimously rejected in *Jones v. Warden, West Virginia Penitentiary,* ___ W. Va. ___, 241 S.E.2d 914 (1978), *cert. denied,* ___ U.S. ___, 58 L. Ed. 2d 125, 99 S.Ct. 107. In the present case, objection was made to the instruction at trial.

accept a presumption as proof beyond a reasonable doubt of any material element of the crime charged, or requires the defendant either to introduce evidence to rebut the presumption or to carry the burden of proving the contrary.[3]

While this case must be reversed and remanded to the trial court, we do note that the defendant is not entitled to an absolute discharge on his writ of habeas corpus. In *Rhodes v. Leverette,* ___ W.Va. ___, 239 S.E.2d 136 (1977), we discussed at some length the relief available on a writ of habeas corpus, and stated that the granting of a writ of habeas corpus "does not ordinarily operate to bar further prosecution under principles of double jeopardy. *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); *State ex rel. Bradley v. Johnson, supra* [152 W.Va. 655, 166 S.E.2d 137 (1969)]; *State ex rel. Tune v. Thompson,* 151 W.Va. 282, 151 S.E.2d 732 (1966)." [239 S.E.2d at 141] We also stressed "that relief will be given so as to cure the underlying constitutional error." [239 S.E.2d at 142] This position is in conformity with federal habeas corpus cases.

Here, the relator should not be given an unconditional discharge until the State is given a reasonable opportunity to determine if it wishes to retry him. In assessing the question of a retrial, the State will have the benefit of *Mancusi v. Stubbs,* 408 U.S. 204, 33 L.Ed.2d 293, 92 S.Ct. 2308 (1972), where it was held that the state could introduce testimony from an earlier trial under appro-

---

[3] This is not to say that any instruction on the use of a deadly weapon is infirm. *State v. Starkey,* ___ W. Va. ___, 244 S.E.2d 219, 226 (1978). The following instruction, patterned from 2 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 41.18 (1977), at 230, would be constitutionally adequate:

Where it is shown that the defendant used a deadly weapon in the commission of a homicide, then you may find the existence of malice from the use of such weapon and other surrounding circumstances, unless there are explanatory or mitigating circumstances surrounding the homicide. You are not obliged so to find, however, and you may not find the defendant guilty unless you are satisfied that the State has established the element of malice beyond a reasonable doubt.

priate circumstances where the witnesses are not currently available.

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is reversed and this case is remanded.

*Reversed and remanded.*