319 S.E.2d 388

**STATE of West Virginia**

v.

**Lennis ANGEL.**

**No. 15949.**

Supreme Court of Appeals of West Virginia.

July 12, 1984.

**622**

David Hanlon, Harrisville, for appellant.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

Lennis Angel appeals from his conviction of first degree murder. Appellant was indicted at the January 1967 term of the Intermediate Court of Kanawha County[1] for the November 19, 1966 murder of Frances Kay Voiles, a 12-year-old girl who was babysitting for appellant's two children. A jury found appellant guilty, and the circuit court affirmed the intermediate court's judgment entered upon the jury's verdict. On appeal to this Court, we affirmed.

*State v. Angel,* 154 W.Va. 615, 177 S.E.2d 562 (1970).

In *Angel v. Mohn,* 162 W.Va. 795, 253 S.E.2d 63 (1979), we found error of constitutional magnitude in the giving of a burden-shifting instruction. The case was remanded to give the State a reasonable opportunity to retry the appellant. 162 W.Va. at 797, 253 S.E.2d at 66.

Because of some unusual circumstances regarding the appointment of attorneys for the appellant, we believe it is necessary to recite in some detail the sequence of events leading up to the trial.

George Daugherty and John MacCorkle, both Kanawha County attorneys, were appointed to represent the appellant.

Retrial was scheduled for August 29, 1979, but it did not commence until February 2, 1981. On August 30, 1979, venue was changed to Ritchie County. Judge Gene S. Campbell asked that another judge be appointed to hear the case. He was replaced by Judge James McClure of Ohio County.

Daugherty moved the court to be relieved of his duty of representation. In an order dated September 28, 1979, the motion was granted, and another Kanawha County attorney, John R. Fowler, was appointed to replace Daugherty. Sam White, Jr., of Pleasants County, was appointed as local counsel.

On October 11, 1979, White advised the court that there were disagreements among members of the defense team and that the appellant preferred that White act as lead rather than local counsel. Upon questioning by the court, the appellant replied that he was "more in tune with the way [White] wants to handle the case."

The court relieved White, suggesting on the record that "you go down and get a writ of prohibition. . . ." The appellant applied for a writ of prohibition. A rule was issued on October 23, 1979, staying all further proceedings. By *per curiam* order, we issued a writ of prohibition preventing the trial from taking place pending the

---

**1.** This court was abolished by the Judicial Reorganization Amendment of 1974. *W.Va. Const.,* Art. VIII.

reappointment of White to represent the appellant. *State ex rel. Angel v. McClure* (No. 14665, filed March 4, 1980).

White was reappointed on May 12, 1980. Judge McClure subsequently recused himself, and Judge Fox was appointed on July 22, 1980. The case was set again for trial on October 29, 1980, but was continued until December 1, 1980. The State moved for a continuance on the ground that a witness was unavailable because of illness. A continuance was granted until February 2, 1981.

The appellant was retried on February 2–5, 1981. The circumstances surrounding the killing of Frances Kay Voiles, as revealed through the evidence presented at the first trial, was thoroughly discussed in *State v. Angel, supra.* The evidence presented in the second trial is substantially similar to that of the first, except that the former Mayor of Nitro did not testify, and there was no psychiatric or psychological testimony presented by either the State or the defendant.

Appellant assigns the following errors: (1) denial of a speedy trial between the indictment and the first trial and between this Court's reversal and the second trial; (2) discharge of lead counsel in the presence of the jury and the refusal to grant a continuance upon the representations of defense counsel that they were unprepared to go to trial; (3) refusal to allow individual *voir dire* of prospective jurors; (4) refusal to suppress evidence obtained as a result of conversations between police and the defendant after a request for a lawyer was made but without the presence of counsel; (5) refusal to declare a mistrial due to the prosecutor's reference in closing argument to the appellant's failure to testify or present evidence; and (6) inclusion of an instruction in the charge to the jury which

shifted the burden of proof to the appellant.

The appellant contends that he was denied a speedy trial because more than three terms of court elapsed between reversal of his conviction and retrial.

A similar contention was made in *State v. Gwinn,* 169 W.Va. 456, 288 S.E.2d 533 (1982), where it was argued that the appellant was not afforded a speedy trial following the granting of habeas corpus relief. We rejected this contention, finding that there had been no unreasonable or oppressive delay.

■ Our review of the record of the case before us reveals that all delays of the retrial, save one, are attributable to the actions of the appellant. The appellant's claim that he was denied a speedy trial is therefore without merit.[2]

On the morning of February 2, 1981, the trial commenced in the Circuit Court of Ritchie County, Judge Fred L. Fox II, presiding. In addition to White and MacCorkle, the appellant was represented by David Hanlon, an attorney practicing law in Ritchie County, who was present to assist with jury selection. The court made opening remarks to the panel of prospective jurors, after which defense counsel White approached the bench. He made a motion to dismiss based on the misconduct of the Kanawha County Prosecuting Attorney. The trial judge ascertained that an argument on the motion would be unnecessary, and he, therefore, refused to delay the trial for that purpose.

White then invoked his privilege as a member of the West Virginia Legislature not to appear in court within ten (10) days immediately preceding a session of the legislature.[3] The next session was to begin on February 11.

---

**2.** The appellant also contends that he should be discharged from prosecution because his first trial was held more than three terms after the indictment. We found no merit to this claim in his first appeal, *State v. Angel,* 154 W.Va. at 626–7, 177 S.E.2d at 569, and he presents no reason why that decision should be disturbed.

**3.** *W.Va.Code,* 4–1–17 [1959], provides, in pertinent part:

> No member of the legislature, without his consent, may be required to appear in any action or proceeding in any court of the State of West Virginia and/or any court sitting in said State as a party, witness or attorney within ten days immediately before, at any time during any session of the legislature, and within thirty days thereafter. . . .

The court initially felt that White had waived the privilege, and when White announced he would withdraw from the case, the court threatened to hold him in contempt and to place him in jail.

The prosecuting attorney advised the court of the immunity from arrest provisions of *W.Va.Const.*, Art. VI, § 17.[4] The court stated that the defendant had the option of proceeding immediately to trial with MacCorkle and Hanlon as defense counsel or agreeing to a continuance. The defendant said that he did not want a continuance, but because he wanted to be represented by White, he felt he had no other choice.

At the close of the bench conference, the court excused White and announced that the case would proceed.

■ The appellant contends that the trial court erred in relieving lead counsel in the presence of the jury, and in denying a continuance after remaining counsel advised the court that the defense was unprepared for trial. He argues that the late appointment of counsel, without adequate opportunity to prepare a defense, denied him effective assistance of counsel. We find no merit in these contentions.

The record shows that the discussion concerning a continuance took place at the bench, out of the hearing of the jury, and did not prejudice the appellant's case.

Although MacCorkle stated that he had never tried a criminal case before, he had assisted White in preparation of the case and was fully familiar with the law and the facts. Hanlon was not as familiar with the facts of the case. He was, however, an experienced trial attorney who, with MacCorkle, presented an adequate and competent defense.

■ "A motion for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion."

Syl. pt. 2, *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979).

The factors relevant in assessing claims of inadequate time to prepare for trial are: the time available for preparation, the likelihood of prejudice from the denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, the availability of discovery from the prosecution, the adequacy of the defense provided at trial, the skill and experience of the attorney, any preappointment or pre-retention experience of the attorney with the accused for the alleged crime, any representation of the defendant by other attorneys that accures [sic] to his benefit, whether the plea for more time to prepare for trial is made in good faith, the public interest in a speedy trial of the case, and the time the defendant has been in prison awaiting trial.

Syl. pt. 4, *State v. Bush, supra.* Under the circumstances of this case, we find no abuse of discretion in the trial court's denial of the continuance. Nor do we find that the appellant was denied the effective assistance of counsel as a consequence of the court's refusal to grant a continuance.

■ The appellant's next contention is that he was prejudiced by the trial court's denial of his request for individual *voir dire*, in chambers, of prospective jurors who had read a newspaper article concerning appellant's prior conviction. We disagree.

■ The trial judge questioned each juror who had read something about the case, and all who expressed reservations about their impartiality were excused. Those remaining stated that the article had not influenced them or caused them to formulate any opinion concerning the appellant's guilt or innocence. Although defense counsel's request to question each juror *in camera* regarding what he had read was denied, the defense was permitted extensive individual *voir dire* in open court. All of the jurors questioned about the arti-

---

4. *W.Va. Const.*, Art. VI, § 17 provides, in part: "Members of the legislature shall, in all cases except treason, felony, and breach of the peace, be privileged from arrest during the session, and for ten days before and after the same."

cle felt that it was neither favorable nor unfavorable toward the appellant, and did not cause them to feel bias or prejudice against him. "In a criminal case, the inquiry made of a jury on its voir dire is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused." Syl. pt. 2, *State v. Beacraft,* 126 W.Va. 895, 30 S.E.2d 541 (1944). *See also State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251, 263 (1983); *State v. Harshbarger,* 170 W.Va. 401, 294 S.E.2d 254, 257 (1982); *State v. Pratt,* 161 W.Va. 530, 244 S.E.2d 227, 231 (1978). The appellant was provided with effective individual *voir dire* of those jurors who had read the article. We find no abuse of discretion in the trial court's refusal to permit the questioning to occur in chambers.

■ We also find no merit in the appellant's assertion that the trial court should have granted a mistrial when the prosecutor in closing argument referred to a fact as "undisputed." He claims that this was intended as a reference to his failure to testify. We have consistently held that isolated remarks that the State's evidence was uncontradicted, without any reference to the defendant's failure to testify, are permissible. In syllabus point 1 of *State v. Clark,* 170 W.Va. 224, 292 S.E.2d 643 (1982), we held:

> In a criminal case, where the defendant has exercised his right not to testify, statements of the prosecuting attorney, in his argument of the case before the jury, that there had been no denial of the testimony introduced by the State, without specific reference to the failure of the defendant to testify, does not come within the inhibition of *Code,* 57–3–6.

■ The appellant contends that another statement by the prosecutor—that the defense could have brought in psychiatrists and psychologists to testify that the defendant was crazy—constitutes grounds for reversal when taken with the other comment. The record shows that the court sustained an objection to this remark and instructed the jury to disregard it, stating that "the defendant has no burden to bring anything in rebuttal of this nature." Under these circumstances, we find no prejudice to the appellant's case in these remarks.

■ The appellant argues that the trial court should have suppressed evidence obtained as a result of conversations between the appellant and police officers after he had requested an attorney. The record shows that the appellant was neither under arrest nor in custody at the time these statements were made. Although he did ask to talk with an attorney, he immediately withdrew this request and indicated his desire to cooperate with the police. In syllabus point 3 of *State v. Bradley,* 163 W.Va. 148, 255 S.E.2d 356 (1979), we held, "There can be no interrogation of a person accused of committing a crime after he requests counsel, until counsel is provided except that if the suspect recants his request before counsel can be provided with reasonable dispatch, interrogation may be conducted." *See also* syl. pt. 4, *State v. Easter,* 172 W.Va. 338, 305 S.E.2d 294 (1983).

■ In this case, the appellant asked to talk to a specific attorney. The police officer immediately looked up that attorney's telephone number, and either started to dial or completed the call but heard a busy signal, when the appellant said, "No, I don't need an attorney. I want to help you." Because the appellant recanted his request for counsel before counsel could be provided, there was no error in conducting the interrogation. It is also significant that the ensuing conversation was initiated by the appellant. *See, e.g., State v. Easter, supra,* at 298; *Edwards v. Arizona,* 451 U.S. 477, 484–5, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378, 386, *reh'g den.,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). Under these circumstances, we find no error in the admission of this evidence.

Finally, the appellant contends that the following portion of the court's charge to the jury unconstitutionally shifted the burden of proof:

> Under the law, where a homicide is proved, the presumption is that it is murder in the second degree. If the State

would elevate it to murder in the first degree, the burden is upon the State to establish beyond a reasonable doubt the characteristics of that crime as previously related herein. If the accused would reduce the crime to manslaughter, the burden is upon him.

The appellant is correct that this Court found a similar instruction to be constitutionally defective in *State v. Dozier*, 163 W.Va. 192, 255 S.E.2d 552 (1979). *See also State v. Pendry*, 159 W.Va. 738, 760-1, 227 S.E.2d 210, 224 (1976); *State v. Messinger*, 163 W.Va. 447, 450, 256 S.E.2d 587, 589 (1979).

However, language nearly identical to the charge was proposed by the appellant. Accused Instruction No. 1 reads, in pertinent part:

Under said law where homicide is proved, the presumption is that it is murder in the second degree. If the State would elevate it to murder in the first degree, the burden is on the State to establish beyond a reasonable doubt the characteristics of that crime; namely, that it was by poisoning, lying in wait, imprisonment, starving, or in the commission of, or attempt to commit, arson, rape, robbery or burglary, or was a wilful, deliberate or premeditated killing, and, if the accused would reduce the crime to manslaughter, the burden of proof is upon him.

The trial court constructed its own charge using its standard charge supplemented with instructions proposed by the State and the defendant. The instruction in question was incorporated into the charge because the trial judge was concerned that if the proposed instruction were refused, error would result.

In syllabus point 7 of *State v. Woods*, 155 W.Va. 344, 184 S.E.2d 130 (1971), we held that "[a] party cannot, by his own instruction, invite error and then complain of such error on appeal." *See also State v. Grimm*, 156 W.Va. 615, 195 S.E.2d 637 (1973); syl. pt. 15, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966); syl. pt. 5, *State v. Calhoun*, 67 W.Va. 666, 69 S.E. 1098 (1910).

In *State v. Dozier, supra*, 163 W.Va. at 197, 255 S.E.2d at 555, we suggested that the "invited error" doctrine was limited to those cases "where the error is truly invited as a part of a trial strategy or tactic." *See People v. Graham*, 71 Cal.2d 303, 78 Cal.Rptr. 217, 455 P.2d 153 (1969); *People v. Phillips*, 64 Cal.2d 574, 51 Cal.Rptr. 225, 414 P.2d 353 (1966); *State v. Boyer*, 91 Wash.2d 342, 588 P.2d 1151 (1979); *Petition of Haynes*, 95 Wash.2d 648, 628 P.2d 809 (1981).

There is no doubt that the appellant's attorney exploited the language of the instruction in an effort to gain a strategical advantage. The defense was faced with an overwhelming quantum of physical and circumstantial evidence linking the defendant to the crime. In addition, two witnesses who had been incarcerated with the appellant at the Kanawha County Jail testified that the appellant made detailed jailhouse confessions.

The instruction now complained of was woven by the defense attorney into his closing argument.[5] Counsel thus attempted to use the instruction for the appellant's benefit, believing he could persuade the jury that the State failed to prove premeditation, an essential element of first degree murder, and that the jury should therefore convict the defendant of nothing more than second-degree murder.[6]

---

5. The closing argument for the appellant contained the following restatement of the court's charge:

There is no question that there has been a homocide [sic] and the judge has told you that, if you have a homocide [sic], that the law presumes that it is murder in the second degree but that in order to show that it was more than that, the State has to prove the premeditation. Now that is what the Court has told you. That is the standard. If there

was neither premeditation or malice, then it is voluntary manslaughter. Those are the instructions that the Court has given you with regard to this.

6. Toward the end of closing argument, the defense attorney said:

Ladies and gentlemen of the jury, somebody hitting your child doesn't justify that person being killed. Of course, it doesn't. Nothing does unless somebody is trying to kill

The record clearly demonstrates that the error was invited and therefore may not serve as a ground for reversing appellant's conviction.

Accordingly, the judgment of the Circuit Court of Ritchie County is affirmed.

Affirmed.

your child maybe and maybe that would, but there is no indication that was the sort of thing that happened, but the question and the issue is, was this a premeditated murder in the first degree, or was it a homocide [sic] that was a result of some sudden passion and the drunkeness [sic] taken together which makes it either manslaughter or second-degree murder.