**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 12-0792 (Raleigh County 05-F-217)**

**Roger P.,**
**Defendant Below, Petitioner**

**FILED**

**February 14, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

The petitioner, Roger P., (hereinafter "the petitioner"),[1] was convicted of three counts of first degree sexual assault, one count of first degree sexual abuse, three counts of incest, and four counts of sexual abuse by a custodian subsequent to a February 2006 jury trial in the Circuit Court of Raleigh County.[2]  The petitioner, by counsel Crystal L. Walden, appeals to this Court, contending that the circuit court improperly instructed the jury with regard to the issue of intent.[3]  The State, by counsel Laura Young, filed a response.

Upon through review of the appendix record, arguments of counsel, and applicable legal precedent, this Court determines that any error committed by the circuit court was harmless, and this Court accordingly affirms the petitioner's conviction.  Based upon our

---

[1]Because of the sensitive nature of the facts in this case, this Court uses the initials of the affected parties.  *See State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990) ("Consistent with our practice in cases involving sensitive matters, we use the victim's initials.  Since, in this case, the victim . . . [is] related to the appellant, we have referred to the appellant by his last name initial."  (citations omitted)).

[2]The petitioner was resentenced for purposes of appeal on May 29, 2012, pursuant to a memorandum decision of this Court issued April 16, 2012, ordering such resentencing based upon ineffective assistance of trial counsel in failing to file an appeal.

[3]The petitioner originally included an assertion that the circuit court erred in denying his motion to strike a juror for cause.  Prior to oral argument of this matter, the petitioner's counsel informed this Court that such issue would not be pursued on appeal.  This Court consequently does not address that issue.

1

decision that this case does not present a new question of law, a memorandum decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The petitioner was charged with sexually abusing his seven-year-old stepdaughter on multiple occasions in 2003.[4] During trial from January 30, 2006, to February 2, 2006, the jury heard evidence regarding the commission of four separate sexual acts which form the basis for all charged counts. Three of those acts involved "sexual intrusion," charged as three counts of first degree sexual assault, three counts of incest, and three counts of sexual abuse by a custodian. One act involved "sexual contact," charged as one count of first degree sexual abuse and one count of sexual abuse by a custodian.

In instructing the jury regarding the elements of the various criminal acts allegedly committed by the petitioner, the circuit court correctly instructed that the petitioner had been charged with first degree sexual assault in violation of West Virginia Code § 61-8B-3 (2010); first degree sexual abuse in violation of West Virginia Code § 61-8B-7 (2010); incest in violation of West Virginia Code § 61-8-12 (2010); and sexual abuse by a custodian in violation of West Virginia Code § 61-8D-5 (2010).

The elements of each of the charged crimes were also properly included in the jury instructions, and the statutory definitions of relevant terms were provided. Specifically, because the petitioner was charged with crimes based upon alleged sexual contact and sexual intrusion, the jury was instructed regarding the definition of "sexual contact" as provided in West Virginia Code § 61-8B-1(6) (2010):

> "Sexual contact" means any intentional touching, either directly or through clothing, of the breasts, buttocks, anus or any part of the sex organs of another person, or intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done *for the purpose of gratifying the sexual desire* of either party.

*Id.* (emphasis supplied). The jury was also correctly instructed regarding the definition of "sexual intrusion" as provided in West Virginia Code § 61-8B-1(8) (2010): "'Sexual intrusion' means any act between persons involving penetration, however slight, of the female sex organ or of the anus of any person by an object for the purpose of degrading or

---

[4]The petitioner was indicted in May 2005 on eight counts of first degree sexual assault; four counts of first degree sexual abuse; four counts of incest; and four counts of sexual abuse by a custodian. Nine of those counts were dismissed prior to trial.

humiliating the person so penetrated or *for gratifying the sexual desire* of either party." *Id.* (emphasis supplied).

In addition to those accurate instructions regarding the charged crimes, however, the circuit court also instructed the jury that intent was not an element of any of the crimes charged in the indictment. Specifically, over the petitioner's objection, the jury was instructed as follows:

> The Court instructs the jury that the crimes charged in this indictment do not include any element of criminal intent, and that a person who commits the acts constituting such crime is guilty regardless of whether or not his intention was criminal.

> You are further instructed that the crimes charged in this indictment do not include any element of specific intent. A person who commits the acts which constitute these crimes is guilty no matter what his state of mind or intent might have been. The State in this case is not required to prove that the defendant acted with any evil or malicious intention. Accordingly, any lack of intent is not a defense to the crimes charged.

The petitioner was ultimately convicted of the eleven counts referenced above and was sentenced to thirty to seventy years of incarceration.

In this Court's review of the petitioner's assertion regarding instructional error, the following standards are applicable:

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only

3

for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). As the *Guthrie* Court articulated, "[t]he basis of the objection [to the jury instruction] determines the appropriate standard of review." *Id.* at 671, 461 S.E.2d at 177. "In this light, if an objection to a jury instruction is a challenge to a trial court's statement of the legal standard, this Court will exercise *de novo* review." *Id.* With these standards as guidance, this Court addresses the issue presented in this case.

The petitioner's sole assignment of error is that the circuit court erred by improperly instructing the jury regarding intent. He maintains that by informing the jury that there was no intent component to the crimes in question, the circuit court included a misstatement of law and committed reversible error on the fundamental issue of the elements of the crimes charged.

As indicated above, the statutes under which the petitioner was charged include specific references to the required underlying intent of the perpetrator. The statutory definitions of both sexual intrusion and sexual contact, as quoted above, include the requirement that the act must be accomplished for the purpose of "gratifying the sexual desire" of either party.[5] *See* W.Va. Code § 61-8B-1(6), -1(8).

This Court has previously addressed the issue of sexual gratification as an element of sexual abuse and has specified that the determination of whether that element has been met should be left to the jury. *State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981). In *Mitter,* this Court reviewed the conviction of a defendant for sexual acts toward his stepdaughters and characterized the gratification issue as a "subjective mental condition of the defendant, i.e. his sexual gratification, which is a key element of the crime of sexual abuse." *Id.* at 538, 285 S.E.2d at 380. The *Mitter* Court concluded that expert testimony on the issue of the subjective intent of an individual was not necessary and "that such issues are matters which the average juror can understand from the facts surrounding the defendant's conduct at the time the crime was committed. . . ." *Id.*

This Court also addressed the intent component of sexual crimes in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986), *overruled on other grounds by State v.*

---

[5]As quoted above, the definition of sexual intrusion provided by West Virginia Code § 61-8B-1(8) also permits a finding of guilt based upon the purpose of degradation or humiliation of the victim. That was not the allegation against the petitioner in the present case, and it is therefore inconsequential to this Court's analysis herein.

*Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). While the State relied upon the concepts of *Dolin* at trial, the petitioner properly contends that *Dolin* is of limited usefulness because the first degree sexual assault statute was altered subsequent to the *Dolin* decision. In *Dolin*, this Court observed that criminal intent was *not* a necessary element of first degree sexual assault; however, at the time *Dolin* was decided, first degree sexual assault included only the act of "sexual intercourse" and did not include "sexual intrusion" as part of that 1976 version of the statute. With the subsequent addition of "sexual intrusion" in the first degree sexual assault statute, applicable to the petitioner in this case, reference must be made to the statutory definition of "sexual intrusion" and its requirement that the act must be *for the purpose of* sexual gratification.

While this Court acknowledges that the circuit court in the present case properly instructed the jury regarding the statutory definitions of each crime charged, we are reluctant to accept the State's ensuing argument that a reading of the instructions *as a whole* reveals no error. By instructing the jury that there was no intent component to the crimes in question and that no intent need be proven, the circuit court contradicted the proper instructions, misstated applicable law, and committed error on the issue of the necessary elements of the charges against the petitioner. *See Guthrie,* 194 W.Va. at 658, 461 S.E.2d at 164, syl. pt. 4.

Having found an error within the instructions provided on the elements of the crimes with which the petitioner was charged, this Court is also mindful that "[m]ost errors, including constitutional ones are subject to harmless error analysis . . . simply because it makes no sense to retry a case if the result assuredly will be the same." *State v. Omechinski*, 196 W.Va. 41, 48 n.11, 468 S.E.2d 173, 180 n.11 (1996) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993)). Where an instruction is found to be defective on an issue of constitutional magnitude such as an element of the crime with which a defendant is charged, the inquiry becomes whether the instructional error can be cured under the constitutional harmless error analysis of *Chapman v. California*, 386 U.S. 18 (1967). In that case, the United States Supreme Court held that a constitutional error could be deemed harmless if the state "prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24.

This Court adopted the principle established in *Chapman* in *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975), explaining as follows in syllabus point five: "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Likewise, this Court noted in *Blair*:

> The doctrine of harmless error is firmly established by statute,
> court rule and decisions as a salutary aspect of the criminal law

5

of this State. In a constitutional context, the doctrine is also applied because appellate courts are not bound to reverse for a technical violation of a fundamental right.

*Id.* at 659, 214 S.E.2d at 337 (citations omitted); *see also* Syl. Pt. 3, *State v. Farmer*, 193 W.Va. 84, 454 S.E.2d 378 (1994) (stating that constitutional errors will be deemed harmless where there is no reasonable possibility the violation contributed to the conviction.); Syl. Pt. 20, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974) ("Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction.").

Examples of this Court's deliberations on this issue include the assessment of harmlessness conducted in *Maxey v. Bordenkircher*, 175 W.Va. 49, 330 S.E.2d 859 (1985). In that case, this Court addressed the erroneous admission of psychiatric testimony regarding the defendant's incriminating statements during a court-ordered psychiatric examination. Although this Court found that the error violated the defendant's privilege against self-incrimination, the Court emphasized that the defendant had submitted a detailed confession and that other evidence unquestionably indicated the defendant's guilt. The Court ultimately found the error harmless, explaining as follows:

> In light of the overwhelming evidence of the appellant's guilt, it is manifest that any harm caused by the admission of psychiatric testimony recounting incriminating statements made during the course of his examination was insignificant beyond a reasonable doubt. There was no reasonable possibility, in light of this evidence, that such admission actually contributed to his conviction. Accordingly, we affirm the judgment of the circuit court.

*Id.* at 52, 330 S.E.2d at 862.[6]

---

[6]In cases of extreme deprivation of rights, this Court has refused to find harmless error. *See* Syllabus, *Angel v. Mohn*, 162 W.Va. 795, 253 S.E.2d 63 (1979) ("The doctrine of harmless constitutional error does not operate to cure a constitutionally impermissible instruction which instructs the jury in a criminal case to accept a presumption as proof beyond a reasonable doubt of any material element of the crime charged, or requires the defendant either to introduce evidence to rebut the presumption or to carry the burden of proving the contrary."). In *Angel*, the circuit court had provided a jury instruction which shifted the burden of proof of an essential element of the crime to the defendant, permitting

Similarly, in *State v. Flippo*, 212 W.Va. 560, 575 S.E.2d 170 (2002), this Court conducted an analysis to determine whether the circuit court's error in admitting certain photographs was harmless beyond a reasonable doubt. The *Flippo* Court meticulously reviewed "other evidence of Mr. Flippo's guilt to see if it provides a sufficient basis for finding Mr. Flippo guilty beyond a reasonable doubt . . ." and considered "what impact, if any, the photographs had on the jury." *Id.* at 582, 575 S.E.2d at 192. The *Flippo* Court found that "[t]he issue of guilt was not remotely close." *Id.* (quoting *People v. Carpenter*, 988 P.2d 531 (Cal. 2000)). The Court reviewed the extensive evidence of guilt, as well as the impact of the photographs, and found that the error in admitting photographs was harmless beyond a reasonable doubt. 212 W.Va. at 588, 575 S.E.2d at 198.

In the present case, this Court has carefully reviewed the entire jury charge, the overwhelming evidence presented against the petitioner, and the arguments of counsel to the jury. All instructions, except the statements regarding intent quoted above,[7] accurately portrayed the substantive law on the offenses with which the petitioner was charged, including the specific issue of gratification of sexual desires. Those correct instructions sufficiently informed the jury of the precise elements required to be proven by the State, and the prosecutor appropriately argued those issues to the jury in closing argument. The prosecutor did *not* utilize the inappropriate intent instructions to attempt to persuade the jury of the petitioner's guilt and did not misstate the law. Rather, the prosecutor informed the jury during closing argument that "sexual gratification is an element of all these crimes. . . ."

Moreover, throughout the trial, the State presented extensive evidence of the petitioner's commission of the sexual acts upon his stepdaughter, including his own confession that he committed the acts. The petitioner admitted that he engaged in various acts of sexual intrusion and sexual contact with the child, inserting his finger into her vagina and having her manipulate his penis. Although the petitioner did not testify at trial, the jury heard the petitioner's confession. The petitioner confessed to police, his wife, and his father and admitted that he had engaged in sexual "play" with the child while her mother was hospitalized for gallbladder surgery. He indicated that he had "rubbed her butt and I guess got sexual feelings by doing that. Then I asked her, I said, would you like me to rub you

_____

the presumption of first degree murder from the use of a deadly weapon. *Id.* at 795, 253 S.E.2d at 64.

[7]This Court cautions circuit courts concerning the inclusion of extraneous and unnecessary instructions. In the same vein, this Court cautions prosecutors that their zealousness must be restrained in an effort to avoid the inclusion of erroneous instructions. An otherwise perfectly-tried case can be very promptly dismantled on appeal because of the addition of an erroneous or misleading instruction.

7

somewhere else. . . ." He also admitted engaging in similar activity on two other occasions and penetrating her vagina with his finger during those episodes. He further stated that he had the child manipulate his penis and that he ejaculated  Additionally, the child victim testified at trial regarding the petitioner's sexual acts and physically demonstrated for the jury the manner in which the petitioner had her manipulate him.

Based upon this Court's review of the record, we find that the jury's verdict of guilt was not influenced by the inclusion of an erroneous intent instruction. The jury was repeatedly advised that the State had the burden to prove that the petitioner acted with the purpose of gratification of his sexual desire, and the extensive and overwhelming evidence of the petitioner's commission of sexual acts against his stepdaughter was the basis for the jury's ultimate finding of guilt.

For the foregoing reasons, this Court affirms the petitioner's conviction.

Affirmed.

**ISSUED:** February 14, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II