## No. 18,751.

BENJAMIN GRAY *v.* PEOPLE OF THE STATE OF COLORADO.
(342 P. [2d] 627)

Decided July 13, 1959.   Rehearing denied August 17, 1959.

Messrs. MELLMAN, MELLMAN & THORN, Messrs. LOESCH & KREIDLER, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN W. PATTERSON, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

PLAINTIFF in error, defendant in the trial court, was charged with the larceny of six calves each belonging to a different person. He is here by writ of error seeking to reverse a judgment of conviction and sentence to the state penitentiary entered by the court after verdicts of guilty returned by the jury. We will refer to him as defendant or by name.

Defendant assigns eight grounds of error. Three refer to instructions given to the jury and to the court's refusal to give an instruction tendered by the defendant. Other claimed errors upon which we will comment are: 1. That the information was improperly drawn and prejudicial to the defendant, and 2. That the district attorney was guilty of improper remarks in his opening statement. The remaining assignments relied on we deem without merit.

There is little dispute in the evidence. Defendant was apprehended by two state brand inspectors who were on a "stake out" along the highway to intercept any unusual movement of livestock. Defendant had the unbranded calves in his pick-up when apprehended at 1:30 o'clock in the morning. Upon being stopped and questioned he said the calves were his (the defendant's). Subsequent undisputed evidence disclosed that each of

the calves belonged to separate Indian owners. Each of the owners testified that they had not given their consent to the taking of the cattle by the defendant. Defendant's explanation of their acquisition was that the calves were sick and were being taken to a veterinarian in Delta. Other evidence, however, was produced to show that the calves were not sick. An eye-witness who helped the defendant cut out the calves from their mothers — a witness called as part of the defendant's case — testified concerning the night ride to get the calves, loading them into a pick-up and driving with lights out so that they would not attract attention. The witness' description of defendant's movement when a car appeared unexpectedly in the vicinity is quite revealing, and is quoted here to indicate that a jury might well conclude that defendant's possession and transportation of the calves was not with any lawful intent. We quote:

"We seen some car lights coming, or Ben did, and he shut off his lights quick and he said, 'Jerk the gate open; somebody is coming,' and we tried to get the gate open, and we watched for a little while and the car went on by up around the road. We were right here (indicating) and there's a road that turns and comes over to the rear of Ben's, and this car was coming on around and Ben got up on top of the barn. He's got a fairly high barn. He got up on top of it and watched and the car went right to here (indicating), and the lights were on for a considerable time, I don't know just how long, thirty minutes I guess, and he watched quite a while for the lights, and after a while they turned off and he got off of the barn * * * He said, 'I can't understand what the lights were up there.' He says, 'I can't figure that out.' He says, 'I think it must be a trap.' He says, 'It was either the brand inspectors going there or else it might be Herley Boyd or it might even be Hawks.' He said, 'Maybe I ought to get a horse and jog up there and see if I can't see what is going on' * * * he says, 'I know this

is a trap,' but he says, 'I sure hate to turn those calves loose after all this work and after gathering them; I sure hate to turn them loose.' "

Since the evidence amply supports the verdict of the jury, the judgment of the court should be sustained unless the assignments of error are so prejudicial as to have denied defendant his right to a fair trial.

First Question to be Determined:

*Can objections to the form of the information be raised for the first time on motion for new trial and then made the basis for a writ of error?*

This question is answered in the negative.

The information was in seven separate counts. One count was dismissed on motion of the District Attorney. Each count charged an alleged larceny of a calf therein described and gave the name of the individual owner. The defendant did not, either prior to or during the trial, object to the information. He entered separate pleas of not guilty to each count. He made no objection to the six separate verdicts submitted by the court to the jury. On motion for new trial defendant contended, as he does here, that the taking of the calves from one place at one time constituted but one act or transaction and that if he was guilty of larceny it was but a single offense. To this argument on the motion the trial court commented:

"No motion in this connection was made at the time the Defendant was arraigned, nor until the present Motion for New Trial. Accepting the argument of counsel for Defendant that the offense established by the evidence could properly have been charged in one count as a larceny of six calves, with different ownership for each calf, the question still remains as to whether a defendant can go to trial without objection on an Information such as that presented here and after a verdict of guilty on the separate counts be entitled to an order of court that the several charges should have been contained in one count and that he was illegally convicted."

The court went on to say:

"However the Information was drawn the evidence would be the same, assuming that all calves were taken at the same time."

█ It is clear from the evidence that the offense charged was one transaction and might properly have been charged in one count. But the failure of the District Attorney so to do did not prejudice the defendant. The jury was instructed that the information is merely an accusation and that it is not to be considered as evidence. In addition the evidence would have been no different had the information listed the six calves of the six owners in one count in the information. The real objection, if any there be, to charging the defendant in more than one count, was stated in *Sweek v. People,* 85 Colo. 479, 277 Pac. 1, as follows:

"No more than one offense *should* be charged in one count; but, by the great weight of authority, the stealing of several articles of property at the same time and place, as one continuous act or transaction, may be prosecuted as a single offense, although the several articles belong to several different owners. See note, 42 L.R.A. (N.S.) 967, 968; 17 R.C.L., p. 54. *This is a humane rule. If each article stolen were of a value sufficient to make the crime a felony, and a separate charge could be filed as to each, a defendant, if convicted, might be sentenced to the penitentiary for the rest of his life."* (Emphasis supplied.)

The court, recognizing that only one offense was committed, sentenced the defendant to a term of not less than three nor more than eight years in the state penitentiary, just as though the information contained only one count.

█ The rule governing objections to the form of the information is to be found in C.R.S. '53, 39-3-7, as follows:

"All exceptions which go merely to the form of an indictment shall be made before trial, and no motion in arrest of judgment or writ of error shall be sustained

for any matter not affecting the real merits of the offense charged in such indictment. * * * "

Cases supporting the statute are: *Critchfield v. People,* 91 Colo. 127, 13 P. (2d) 270; *Warren v. People,* 121 Colo. 118, 213 P. (2d) 381; *Cooper v. People,* 132 Colo. 548, 291 P. (2d) 388; *Marrs v. People,* 135 Colo. 458, 312 P. (2d) 505.

Second Question to be Determined:

*Did the court err in giving instruction No. 8 with reference to similar offenses?*

This question is answered in the negative.

Defendant contends that the instruction was prejudicial in that there was no evidence in the record of *"other offenses"* committed by the defendant. The instruction complained of reads as follows:

"There is some evidence with reference to *other offenses* than that charged in the information. This evidence is admissible only as bearing upon the question of whether or not the defendant had a plan or design to produce a result of which the act charged in the information was a part, and you can consider such evidence for no other purpose. The defendant cannot be tried for, or convicted of, any offense not charged in the information." (Emphasis supplied.)

While we do not approve of the language of the instruction, it appearing to label as a matter of law certain conduct of defendant as "other offenses," nevertheless it was given for the benefit of the defendant, having been tendered by defendant's counsel and strenuously resisted by the prosecuting attorney. It was finally given by the court upon the insistence of the defendant. In addition to the rule that instructions not objected to at the trial will not be considered on writ of error, we cannot consider the trial court to be in error for giving an instruction *demanded* by the defense. Instruction No. 5 is in the same category — offered by the defendant and given by the court over objection of the district attorney.

Third Question to be Determined:

*When in the opening statement of the District Attorney there are improper or prejudicial remarks and no objection is made thereto, may the utterances be urged as grounds for reversal on writ of error?*

This question on this record is answered in the negative.

Defendant complains that the district attorney in his opening statement expressed his personal belief in the guilt of the defendant. The remarks of the district attorney are:

"That, ladies and gentlemen, is the essence of the People's case, and without going into more detail as to the specific testimony of the various witnesses. We think that you will be convinced, *as we who represent the People are convinced, beyond any reasonable doubt,* that this defendant was engaged in a wholesale operation of theft from the members of the Ute Indian Tribe." (Emphasis supplied.)

No objection to this statement was made by the defendant. It was not called to the attention of the court. The court was given no opportunity to admonish counsel for the prosecution or to instruct the jury as to the purpose of opening statements of counsel. Nevertheless the court did by instruction No. 14 tell the jury that the opening statements and final arguments of counsel are not evidence. For comments on similar situations see *Manzoli v. People,* 69 Colo. 131, 169 Pac. 144; *Jordan v. People,* 19 Colo. 417, 36 Pac. 218; *Morrison v. State,* 76 Ind. 335.

Fourth Question to be Determined:

*Did the court err in refusing to give defendant's tendered instruction No. A?*

This question is answered in the negative.

The tendered instruction is:

"You are instructed that a servant or employee who has the legal possession of goods, as distinguished from

the bare custody thereof, cannot be held guilty of larceny."

Defendant contends the offering of this instruction was on the theory of the defense and should be given "No matter how improbable or unreasonable the contention, * * *." *Jabich v. People,* 58 Colo. 175, 143 Pac. 1092. As previously noted, instruction No. 5 was also tendered by the defendant as supporting the theory of the defense. His testimony, if believed, was that he had general authority to protect sick cattle, if found. That defendant was hired to ride the fence and repair the same is not disputed. At no time did he contend, however, nor was there testimony of any other witness, that he was in lawful possession or in custody generally of the herds. He did testify that he had been told that if, when repairing fences, he saw any cattle that needed attention he was not to let them die, but was to take them to be doctored. Thus he testified in effect that he had implied consent to take sick cattle to the veterinarian. As was previously noted, the calves involved here were not sick. The jury heard the defendant's testimony. The over-all instruction as to the elements of the crime of larceny, together with Instruction No. 5, covered the law of the case adequately.

Perceiving no reversible error in the record, the judgment is affirmed.