[No. 20138-7-I. Division One. September 19, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. MARILYN KATHERINE CARPENTER, *Appellant.*

*Julie A. Kesler* and *Dennis Benjamin* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Patricia Shelledy, Deputy,* for respondent.

WEBSTER, J.—Marilyn Carpenter appeals her conviction of attempted second degree murder, alleging an equal protection violation, ineffective assistance of counsel, and the jury's consideration of material not properly before it. We affirm.

## FACTS

Carpenter was charged with the attempted first degree murder of Edwon Peters III. Peters and Carpenter's daughter had been engaged in a bitter custody dispute over their son. Growing out of this dispute was a disagreement between Carpenter and Peters concerning whether Carpenter had damaged Peters' fence with her car. About 5 months after the damage occurred, Carpenter called Peters, requesting that he come to her residence where she would pay him for the damage.

Peters and Carpenter gave different accounts about what transpired when Peters arrived at Carpenter's home. Peters testified that when he bent over to examine a check that Carpenter had written, he heard a shot and felt something enter his stomach. Peters stated, "You shot me", and Carpenter responded, "You aren't dead. I'm going to kill you." Peters then grabbed the gun from her, left the apartment, and sought help.

Carpenter testified that she was advising Peters on how to raise his son when he began to yell and hit her. She then told him to stop, warned him that she had a gun, and pulled it from the pocket of the sweater she was wearing. As they struggled over the gun, it accidentally discharged. She further testified that she had purchased the gun in order to commit suicide. Suicide notes written by Carpenter to her children were introduced to corroborate her story.

The jury was instructed on the crime charged as well as the following offenses: attempted second degree murder and all three degrees of assault. Both parties had proposed instructions on attempted second degree murder, and two of Carpenter's proposed instructions were adopted by the court. Carpenter later objected to certain of the instructions on attempted second degree murder, including one she had proposed, although not on the grounds raised by Carpenter on appeal. The jury returned a verdict of guilty of attempted second degree murder.

During closing argument, the prosecutor referred to copies of the suicide notes. These copies contained some

highlighting and a few notes in the margins and were, inadvertently, taken to the jury room. Before Carpenter was sentenced, the trial judge informed the parties (1) that he had personally examined the copies and found them to be duplicates, (2) that he was satisfied that the mistake was inadvertent, (3) that the prosecutor's annotations and highlights were minimal, and (4) that the jury's decision would have been the same anyway.

## INVITED ERROR

Carpenter has assigned error to the second degree murder instructions, claiming an equal protection violation. She does not contend that any particular instruction is erroneous; rather, she argues that they should not have been given at all. According to Carpenter, attempted second degree murder and first degree assault are concurrent statutes, and the latter statute is a special statute that must be applied to her criminal actions rather than the former. *See, e.g., State v. Shriner,* 101 Wn.2d 576, 580, 681 P.2d 237 (1984).

However, this error, if any, has not been preserved for review. First, no exceptions were taken at trial to two of the instructions at issue; therefore, they become the law of the case and are not reviewable. *State v. Byrd,* 25 Wn. App. 282, 287, 607 P.2d 321 (1980). Second, although Carpenter did object to the remaining instructions, these objections were not based on an equal protection violation. Because those exceptions were not sufficiently particular to call the court's attention to the claimed error, we decline to consider them on appeal. *State v. Welker,* 37 Wn. App. 628, 638, 683 P.2d 1110, *review denied,* 102 Wn.2d 1006 (1984).

We reach the same result by applying the doctrine of invited error. A party cannot request an instruction and later complain on appeal that the instruction should not have been given. *State v. Kincaid,* 103 Wn.2d 304, 314, 692 P.2d 823 (1985). Carpenter has urged us to apply RAP 2.5(a)(3) which allows a party to raise for the first time on appeal "manifest error affecting a constitutional right."

However, even where constitutional issues are involved, invited error precludes review. *In re Griffith,* 102 Wn.2d 100, 102, 683 P.2d 194 (1984); *State v. Boyer,* 91 Wn.2d 342, 344–45, 588 P.2d 1151 (1979).

## EFFECTIVE ASSISTANCE OF COUNSEL

■ Carpenter next argues that if we decline to review the alleged equal protection violation because of invited error, then her trial counsel failed to provide her with effective assistance of counsel. The benchmark for judging this claim is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, 2064–65 (1984). A 2–part test is used to determine whether a defendant has received effective assistance of counsel: first, the defendant must show that counsel's performance was deficient, *State v. Jeffries,* 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied,* 479 U.S. 922 (1986); *Strickland,* at 688; second, the defendant must show that counsel's deficient performance prejudiced him. *Strickland,* at 694. Courts engage in a strong presumption that defendants have received effective assistance from their attorneys. *State v. Serr,* 35 Wn. App. 5, 12, 664 P.2d 1301, *review denied,* 100 Wn.2d 1024 (1983).

In support of her argument, Carpenter has referred us to *State v. Ermert,* 94 Wn.2d 839, 621 P.2d 121 (1980), where the appellate court found that the defendant had been denied effective assistance of counsel as judged under the pre–*Strickland* standard. *Ermert,* at 849. In order to demonstrate trial counsel's poor performance, the appellate court examined an instruction which misstated the elements of the crime despite the fact that the issue had not been preserved for review. *Ermert,* at 849–50. However, this error was not the only mistake made by trial counsel. He also failed to cite to clearly controlling case law, showed little trial preparation, asked questions which unnecessarily aided the State, objected poorly, and proposed badly

drafted instructions. *Ermert,* at 843, 850 & n.1. In other words, the *Ermert* court did not rely solely on the erroneous instruction in finding ineffective assistance of counsel.

Even assuming that the instruction here was erroneous, Carpenter has not identified any other mistakes made by her trial attorney, and this one alleged mistake pales in comparison to the many shortcomings exhibited by defense counsel in *Ermert. See also State v. Jury,* 19 Wn. App. 256, 264, 576 P.2d 1302 (court found incompetent assistance based on counsel's failure to interview and subpoena witnesses as well as failure to inform court of the substance of their testimony upon which motions for continuance and new trial were made), *review denied,* 90 Wn.2d 1006 (1978). "'The constitution does not guarantee successful assistance of counsel.'" *State v. Slemmer,* 48 Wn. App. 48, 58, 738 P.2d 281 (1987) (quoting *State v. Garcia,* 45 Wn. App. 132, 140–41, 724 P.2d 412 (1986)). We, therefore, conclude that Carpenter has not shown that her attorney's performance was deficient as required by the first prong of the *Strickland* test.

### COPIES OF THE SUICIDE NOTES

■ Carpenter also contends that she did not receive a fair trial because the prosecutor's copies of the suicide notes were taken into the jury room. Before a verdict will be vitiated because a jury considered material not properly before it, the defendant must make a showing of reasonable grounds to believe that he or she has been prejudiced. *State v. Lemieux,* 75 Wn.2d 89, 91, 448 P.2d 943 (1968); *see State v. Rinkes,* 70 Wn.2d 854, 862, 425 P.2d 658 (1967). In the absence of a showing of actual prejudice, the probability of prejudice to the defendant must be demonstrated. *State v. Hicks,* 41 Wn. App. 303, 312, 704 P.2d 1206 (1985).

Carpenter has not demonstrated actual prejudice, and, given the facts of this case, we will not presume it. *See State v. Adamo,* 128 Wash. 419, 422, 223 P. 9 (1924) (in dicta, the court stated that prejudice might be presumed if the extraneous material were a newspaper article which

attacked the defendant or expressed an opinion as to his guilt). Consequently, the issue is whether Carpenter has shown a probability of prejudice stemming from the mistake.

Carpenter argues that the requisite showing has been made because the jury was instructed to consider all evidence before reaching the verdict. The State contends otherwise, pointing out that the notes were not marked as exhibits and the jurors were instructed to consider only the testimony and exhibits in arriving at their verdict.

In evaluating whether prejudice has been shown, courts have considered whether the material was marked as an exhibit. *See Rinkes,* at 862–63 (where the court found prejudice stemming from a cartoon and newspaper article which criticized "lenient court decisions" and which was marked as an exhibit); *Hicks,* at 313 (where the court found no prejudice stemming from a newspaper article which discussed the pros and cons of the insanity defense and which was not marked as an exhibit). However, more importantly, courts have also taken into account the nature of the material. *See Adamo,* at 420–23 (no prejudice found arising in defendant's second trial from the juror's mere reading of a newspaper headline stating that the defendant had been convicted in the first trial); *Rinkes,* at 862–63 (prejudice found where cartoon and article criticized "lenient court decisions"); *Hicks,* at 312–13 (no prejudice found concerning newspaper editorial on sanity defense because it did not specifically refer to defendant's trial and it discussed both the pros and cons of the defense).

Given the nature of the material involved in this case, we conclude that Carpenter has not shown a probability of prejudice. The substance of the suicide notes and the inferences to be drawn from them were extensively discussed by the prosecutor during closing argument. The highlighting and annotations merely paralleled the prosecutor's remarks and, therefore, did not prejudice Carpenter.

■ Carpenter also attacks the mistaken delivery of the notes as an impermissible comment on the evidence by the trial court.

Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.

Const. art. 4, § 16. A trial judge's statement constitutes "a comment on the evidence only if the court's attitude toward the merits of the cause is reasonably inferable from the nature or manner of the judge's statement." *State v. Carr,* 13 Wn. App. 704, 710, 537 P.2d 844 (1975).

Carpenter has not cited to a case where mistaken delivery of extrinsic evidence to the jury has been equated with improper judicial comment. Although the personal opinion of a trial judge may be conveyed both directly or by implication, *State v. Jacobsen,* 78 Wn.2d 491, 495, 477 P.2d 1 (1970), in determining whether words or actions amount to a comment on the evidence, the appellate court looks to the facts and circumstances of the case. *Jacobsen,* at 495. Here, the trial court did not verbally remark or take any action directed at the notes except to review their possible impact on the verdict. Consequently, this argument is also without merit.

We affirm.

SWANSON and WILLIAMS, JJ., concur.