The PEOPLE of the State of Colorado, Petitioner,

v.

Toby E. ZAPATA, Respondent.

No. 88SC153.

Supreme Court of Colorado.

Sept. 18, 1989.

As Modified on Denial of Rehearing Oct. 16, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Clement P. Engle, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, State Public Defender, and Rachel A. Bellis, Deputy State Public Defender, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *People v. Zapata*, 759 P.2d 754 (Colo.App.1988), which affirmed the conviction of Toby E. Zapata (defendant) on two counts of first-degree sexual assault, two counts of second-degree burglary, and two counts of violent crime, but vacated the sentences imposed for burglary. On certiorari, the prosecution asserts that the invited error doctrine bars appellate review of error in a jury instruction, where the instruction was drafted and tendered by the defense. We conclude that it does, and although we affirm the court of appeals, we disagree with the reasoning in Part I of the opinion which would replace the invited error doctrine with a plain error analysis.

I.

In the late evening or early morning hours of October 13–14, 1983, J.E., a woman living with her two young children in Denver, was awakened by a man who entered her bedroom, and told her that if she screamed, he would kill her. She felt a sharp instrument pressed against her cheek or neck. When he spoke to her in his low voice, he referred to her as "lady." The assailant then undressed her and forced her to engage in vaginal intercourse. Before leaving, he told her not to call the police, that he would be watching, that he was not far away, and that he would be back. After he left, she found that the kitchen window was open, and that the screen was bent back. The police were called and found latent fingerprints around the kitchen screen. J.E. told the police that she had gotten a good enough look at her assailant to identify him, although she identified him as Caucasian. Samples taken from the victim's vagina and mouth at a hospital in the early morning after the attack were inconclusive as to her attacker's identity.

Early in the morning on June 1, 1984, J.E. was awakened by a man standing over her, and she realized that it was the same man that had assaulted her in October. He

again threatened to kill her if she screamed, and pressed a sharp instrument into her back, stating, "I told you I would be back." Referring to her as "lady," he told her that his brother was dead and she had caused his death. Undressing her, he forced her to engage in anal and vaginal intercourse. When he found no money in her purse, he became angry. Pressing the sharp instrument into her back, he said he was going to kill her, but apparently changed his mind and left. This time she noticed that he had a tattoo of a cross on the web between the thumb and forefinger. Tests of samples taken from the victim's vagina, anus, and mouth revealed the attacker to either have type "O" blood, or be a non-secreter. This time she described him as "Spanish" and as having a goatee or moustache.

On August 6, 1984, J.E. thought she saw the assailant at a gas station in Denver, and notified the police. Using information she gave them, a photographic lineup was conducted two weeks later, at which she identified a particular individual. However, his blood type was inconsistent with the sample taken on June 1, and he was eliminated as a suspect.

Acting on an informant's tip, and information obtained by computer, Denver police obtained an arrest warrant for Toby Zapata, the defendant. He was arrested at his residence, about eight blocks from where J.E. lived, on September 11, 1984. Defendant gave a videotaped statement after his arrest, confirming some, but not all, of the details of the two attacks on J.E. In addition, it was determined that his blood type was consistent with that of the assailant, as is that of 56% of the male population. A fingerprint expert testified at the trial that prints taken from the defendant matched the latent prints taken from the

victim's screen on October 14, 1983. Finally, a photograph taken of the defendant's left hand on March 28, 1985, showed a cross.

## II.

The defense at trial was that the victim had misidentified the defendant. The defendant's attorney submitted a number of instructions on the misidentification defense which were refused by the trial court. The defendant then presented Instruction No. 12 to the court, which is the pivotal issue on appeal.[1] Instruction No. 12 was prepared solely by the defendant, and was accepted by the court without change.

On direct appeal, the defendant maintained that Instruction No. 12 misstated the burden of proof, allowing the jury to find the defendant guilty on a standard less than beyond a reasonable doubt.[2] Because the instruction had been proposed by the defendant, the court of appeals recognized that the doctrine of invited error was applicable. However, in commenting on the invited error doctrine, the court of appeals, relying on *People v. Mackey*, 185 Colo. 24, 521 P.2d 910 (1974), stated:

> The invited error doctrine has been stated as a rule of strict preclusion of review. However, the right to trial by jury is a fundamental constitutional right guaranteed in a criminal prosecution. The ultimate duty to instruct properly lies with the trial court under *People v. Mackey, supra. Thus it is illogical to apply the invited error doctrine in a manner which strictly prohibits review of fundamentally erroneous instructions which result in manifest prejudice or unfairness.*

---

1. Instruction No. 12 read as follows:

   It is the accused's theory of the case that he has not been correctly identified as the perpetrator of the offense(s) charged.

   If you find from all the evidence that the accused has been incorrectly identified, then you should find the accused not guilty.

   If, however, you find from all the evidence the accused was correctly identified and the prosecution has proven beyond a reasonable

doubt all other elements of the offense(s) charged, you should find the accused guilty.

2. The court of appeals agreed that, "standing alone, the instruction quoted above might be construed to require the defendant to prove his misidentification by some unspecified standard." 759 P.2d at 756. Because we conclude that review is precluded by the doctrine of invited error, we do not reach this issue.

*Zapata,* 759 P.2d at 756 (emphasis added). We disagree.

We have long followed the rule that a party may not complain on appeal of an error that he has invited or injected into the case; he must abide the consequences of his acts. *People v. Collins,* 730 P.2d 293 (Colo.1986); *People v. Shackelford,* 182 Colo. 48, 511 P.2d 19 (1973); *Stilley v. People,* 160 Colo. 329, 417 P.2d 494 (1966); *Palmer v. Gleason,* 154 Colo. 145, 389 P.2d 90 (1964); *Gray v. People,* 139 Colo. 583, 342 P.2d 627 (1959).[3]

The invited error doctrine applies to jury instructions. *Collins,* 730 P.2d at 304–05; *Gray,* 139 Colo. at 588, 342 P.2d at 630. Recently, we said:

> We have held that under the doctrine of "invited" error, a party may not complain where he has been the instrument for injecting error in the case; he is expected to abide the consequences of his acts. *People v. Shackelford,* 182 Colo. 48, 511 P.2d 19 (1973); *see also United States v. Irwin,* 654 F.2d 671 (10th Cir. 1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). We hold that any error was error injected by the defendant as a matter of trial strategy, and the defendant may not now be heard to complain.

*Collins,* 730 P.2d at 304–05. Similarly, in *Gray v. People,* the defendant submitted an instruction which implied that he had committed "other offenses" than the one charged. On appeal, the defendant alleged error in the instruction, but we declined to consider it, stating:

> While we do not approve of the language of the instruction, it appearing to label as a matter of law certain conduct of defendant as "other offenses," nevertheless it was given for the benefit of the defendant, having been tendered by defendant's counsel and strenuously resisted by the prosecuting attorney. It was finally given by the court upon the insistence of the defendant. In addition to the rule that instructions not objected to

at the trial will not be considered on writ of error, *we cannot consider the trial court to be in error for giving an instruction demanded by the defense.*

139 Colo. at 588, 342 P.2d at 630 (emphasis added).

Under the facts of this case, no reason exists to depart from the longstanding invited error rule. The allegation of constitutional error in the jury instruction does not require us to abandon the strict preclusion of review of invited error. The defendant in a criminal case may waive constitutional rights, and properly be held accountable for his choice:

> The right to trial by jury, the right to counsel, the right not to incriminate one's self, and related matters are known as alienable constitutional rights or as rights in the nature of personal privilege for the benefit of the person who may seek their protection. Such rights, whenever assertable, may be waived.

*Geer v. Alaniz,* 138 Colo. 177, 181, 331 P.2d 260, 262 (1958). Other jurisdictions have reached the same result. *See, e.g., State v. Boyer,* 91 Wash.2d 342, 588 P.2d 1151 (1979); *State v. Carpenter,* 52 Wash.App. 680, 763 P.2d 455 (1988) (invited error doctrine precludes review of even constitutional error in jury instructions submitted by criminal defendant); *Patterson v. State,* 233 Ga. 724, 213 S.E.2d 612 (1975) (same).

In *Patterson* the defendant's attorney tendered an alibi instruction that was inconsistent with the presumption of innocence, and placed the burden of proof on the criminal defendant. On appeal, the defendant contended that the invited error doctrine should not bar review. The Georgia Supreme Court disagreed:

> Defendant's attorney argues now that even assuming he requested the charge, nonetheless he may not for this procedural reason be barred from complaining of it, because its infirmity is of constitutional magnitude. Translated, this argument urges that one may not waive a constitutional right. This is not the law.

---

**3.** *Martinez v. People,* 166 Colo. 524, 444 P.2d 641 (1968), is not to the contrary. The erroneous instruction complained of was not formulated by the defendant, although a similar charge was requested by the defendant, but refused by the court. Thus, it could not be said that it was the defendant's conduct that led the court into error.

A criminal defendant may in a procedural setting implement choices which have the effect of waiving basic constitutional guarantees.... In *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, and recently in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, the United States Supreme Court has discussed extensively the standards for valid waivers of certain constitutional protections. There is nothing in those opinions which undercuts the long standing rule that error may not be enumerated upon the giving of a charge requested by defendant's counsel.

233 Ga. at 731, 213 S.E.2d at 617–18 (citations omitted). We agree with the reasoning of the Georgia Supreme Court.[4]

We do not approve the assertion of error on appeal by the very party who injected that error into the trial. The reasoning of the court of appeals on invited error is disapproved, but the judgment is affirmed in all other respects.

Judgment affirmed.

QUINN, C.J., specially concurs.

LOHR, J., specially concurs.

Chief Justice QUINN specially concurs.

I specially concur in the result. While in prior decisions we have applied the invited

error rule to preclude our consideration of alleged errors that were caused by defense counsel in the course of a criminal prosecution,[1] I would not apply the rule in such a manner as to preclude meaningful appellate review of invited errors that raise a substantial question as to the underlying fairness and integrity of the factfinding process. In contrast to the majority, I would evaluate such invited errors under the plain error standard of review adopted by this court in *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987)—that is, whether the alleged error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. Because I am satisfied that the error in this case did not meet that rigid standard of review, I would affirm the judgment.

### I.

The instruction tendered by defense counsel in this case stated as follows: that it was "the accused's theory of the case that he had not been correctly identified as a perpetrator of the offense as charged;" that if "you find from all the evidence that the accused has been incorrectly identified, then you should find the accused not guilty;" and that if "you find from all the

---

4. We are aware that some courts have found an exception to the invited error doctrine where the error was not a part of the defendant's trial strategy. *See, e.g., People v. Graham,* 71 Cal.2d 303, 455 P.2d 153, 78 Cal.Rptr. 217 (1969); *State v. Dozier,* 163 W.Va. 192, 255 S.E.2d 552 (1979). We are not presented with such a case here. The only defense was misidentification, which was the keystone of the defense. It was the theme of the defendant's closing argument. The trial court had refused four of the instructions offered by the defendant, but precisely because counsel considered the instruction crucial to the defense, he offered Instruction No. 12. Merely because, in hindsight, the instruction may have been a mistake does not alter the fact that it was demanded by the defendant, and he must abide the consequences. *See, e.g., State v. Angel,* 319 S.E.2d 388 (W.Va.1984) (misstating of elements of offense charged in jury instruction submitted by defendant was subject to invited error doctrine where defendant attempted to benefit from instruction in closing argument).

1. *See, e.g., People v. Collins,* 730 P.2d 293 (Colo. 1986) (invited error rule precludes considera-

tion of jury instruction, tendered by defense counsel and given by court, which limits heat of passion defense to second degree assault and does not extend to first degree assault); *People v. Shackelford,* 182 Colo. 48, 511 P.2d 19 (1973) (where defense counsel on cross-examination asked open-ended question that elicited the very information which defense counsel had requested the court to caution witnesses against offering in their testimony, invited error rule precluded consideration of whether defendant was prejudiced by such testimony); *Stilley v. People,* 160 Colo. 329, 417 P.2d 494 (1966) (where defendant successfully moved for elimination of death penalty from case, invited error rule applied to preclude consideration of defendant's claim that trial court erred in not submitting the issue of penalty to the jury); *Gray v. People,* 139 Colo. 583, 342 P.2d 627 (1959) (invited error rule applicable to preclude consideration of defendant's challenged jury instruction on similar offense evidence, which instruction was given at defense counsel's request).

evidence that the accused was correctly identified and the prosecution has proven beyond a reasonable doubt all other elements of the offense charged, you should find the accused guilty." In his appeal to the court of appeals, the defendant contended that the instruction erroneously informed the jury that the critical element of identity need not be proven beyond a reasonable doubt. The court of appeals initially held that the invited error rule did not preclude appellate review of the defendant's claim, reasoning as follows:

> The invited error doctrine has been stated as a rule of strict preclusion of review. However, the right to trial by jury is a fundamental constitutional right guaranteed in a criminal prosecution. The ultimate duty to instruct properly lies with the trial court under *People v. Mackey*, [185 Colo. 24, 521 P.2d 910 (1974)]. Thus it is illogical to apply the invited error doctrine in a manner which strictly prohibits review of fundamentally erroneous instructions which result in manifest prejudice or unfairness.

*People v. Zapata*, 759 P.2d 754, 756 (Colo. App.1988). The court then addressed the merits of the defendant's claim and concluded that the challenged instruction, when read in conjunction with the other instructions, did not constitute plain error and, hence, was "insufficient to mandate reversal." *Id.* I agree with the court of appeals' analysis and resolution of this case.

## II.

I acknowledge that there probably is a difference in kind, and not merely in degree, between defense counsel's failure to object to a constitutionally erroneous instruction on the burden of proof—an error clearly reviewable under a plain error standard pursuant to Crim.P. 52(b)—and defense counsel's tendering of a similarly unconstitutionally infirm instruction which is submitted to the jury in spite of its constitutional infirmity. In my view, however, this difference is not so substantial as to permit an appellate court to correct the error in the former case and to preclude it from addressing the error in the latter situation. If the claimed error is truly "plain," in that it so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the result, it would seem to me that an appellate court, rather than refusing to address the issue by a wooden application of the invited error rule, should come to grips with the defendant's claim in order to prevent a possible miscarriage of justice.

To be sure, the invited error in most cases will result from the inadvertence or negligence of defense counsel, but it is the defendant, and not defense counsel, who will bear the stigma of a criminal conviction and, in many cases, the burden of a prison sentence. Permitting an appellate court to consider an invited error under a plain error standard of review does no more than provide an appellate court with the necessary means to reverse a criminal conviction obtained in derogation of fundamental fairness and when there is serious doubt concerning the reliability of the factfinding process.[2]

The court of appeals followed the salutary course of addressing the merits of the defendant's claim notwithstanding the fact that the alleged error was invited by defense counsel. I am convinced that the invited error in this case was not such as to undermine the fundamental fairness of the trial itself and to cast serious doubt on the reliability of the factfinding process. Because the invited error in this case did not

---

**2.** I recognize that the application of the invited error doctrine on a direct appeal will not preclude a defendant from filing a petition for postconviction relief under Crim.P. 35(c) after the appellate process has run its course. Even if the defendant is successful in convincing the postconviction court that he was denied his constitutional right to effective assistance of counsel or that his constitutional rights were otherwise violated in the original trial, any relief will

not likely occur until the defendant has already served a substantial portion of a sentence that arguably should never have been imposed in the first instance. An appellate court's willingness to address and resolve the invited error on direct appeal under the plain error standard of review will obviate any additional injustice resulting from the defendant's service of additional time on a conviction determined to be invalid.

rise to the level of plain error, I concur in this court's affirmance of the judgment of conviction.

Justice LOHR specially concurring:

I agree with the Colorado Court of Appeals that any error in Instruction No. 12 did not constitute plain error and does not require reversal of the defendant's judgment of conviction. *See People v. Zapata,* 759 P.2d 754, 755–56 (Colo.App.1988). I agree as well with the majority opinion that when error is invited it need not be scrutinized with even the limited rigor appropriate to plain error analysis to determine whether the error requires reversal. The majority opinion, however, can be read to suggest that invited error is never reversible. I cannot go that far. The circumstances under which invited error can arise, including the extent of participation by the defendant in "issuing the invitation," are so many and varied, and the potential consequences of such an error for a miscarriage of justice are so severe, that we would be best advised to address the issue of whether invited error requires reversal on a case by case basis. I therefore concur in the result reached by the majority but not in all that is said in arriving at that result.