2012 CO 60

**The PEOPLE of the State of Colorado, Petitioner**

v.

**Charles Anthony GROSS, Respondent.**

No. 10SC617.

Supreme Court of Colorado,
En Banc.

Oct. 1, 2012.

As Modified on Denial of Rehearing
Nov. 5, 2012.

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Walta Harms & Dingle, LLC, Mark G. Walta, Denver, Colorado, Attorneys for Respondent.

Justice BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this appeal, we review the court of appeals' unpublished decision in *People v. Gross*, 07CA2255, slip op. at 7, 2010 WL 1241162 (Colo.App. Apr. 1, 2010) (not selected for official publication), reversing the defendant's convictions arising out of a shooting at a campground. The court of appeals concluded that the trial court committed cumulative error by instructing the jury on the initial aggressor doctrine, which was requested by defense counsel; by allowing the prosecutor to argue that the defendant did not satisfy the duty to retreat, a requirement of the initial aggressor jury instruction; and by failing to instruct the jury that it could consider self-defense with respect to the crime of extreme indifference murder. In so holding, the court reasoned that the attorney incompetence exception to the invited error doctrine permits plain error review of a defense-tendered instruction. *Gross*, slip op. at 4–5. We now reverse.

■ ¶ 2 We hold that the invited error doctrine precludes plain error review of a defense-tendered instruction. The attorney incompetence exception does not apply to deliberate, strategic acts of defense counsel but rather to inadvertent errors or oversights. Here, the invited error doctrine precludes the defendant from arguing that the trial court erred by giving the initial aggressor instruction because the defendant's trial counsel made a deliberate, strategic decision to request it. Likewise, the prosecutor's statements during closing argument about the duty to retreat—an aspect of the initial aggressor instruction—also may not be raised on appeal. In addition, the trial court should have instructed the jury on self-defense with respect to the crime of extreme indifference murder, but we hold that this error does not amount to plain error. Hence, we reverse the judgment of the court of appeals and return this case to that court for consideration of the two remaining issues that it did not previously address on appeal.

## I. Facts and Procedural History

¶ 3 Mr. and Mrs. Madrid and their teenage son spent an afternoon camping on part of a double campsite, the other half of which was occupied by the defendant, Charles Gross. After dark, the Madrid family packed up their belongings, extinguished their fire, and prepared to leave. As they began to back out of the campsite in their truck, the defendant approached the passenger side of the vehicle, and Mrs. Madrid rolled down the window. The defendant asked whether the family was going to clean up the campsite before leaving. A verbal dispute ensued and quickly escalated; alarmed, Mrs. Madrid closed her window. As the family began to drive away, the defendant fired four shots at the vehicle, killing Mrs. Madrid and injuring Mr. Madrid. Police later found one bullet lodged in the headrest of the driver's seat and another in the truck's radiator.

¶ 4 At trial, the defendant testified that Mr. Madrid was hostile during the verbal exchange. He stated that he saw Mr. Madrid reach beneath the driver's seat for what he believed was a weapon. Then, when Mrs. Madrid closed the darkly-tinted passenger window, the defendant could no longer see into the cab. As he began to walk away, the defendant testified, the Madrids' vehicle rolled toward him. The defendant claimed that the combination of these factors caused him to fear for his life, and he fired several shots in response.

¶ 5 The trial court instructed the jury on the charged offenses of first-degree extreme indifference murder, attempted extreme indifference murder, and second-degree assault, as well as the lesser-included offenses of second-degree murder and manslaughter. At the defendant's insistence and over the prosecution's objection, the trial court also

instructed the jury on self-defense [1] and gave an initial aggressor instruction.[2] Both instructions limited the defenses to the charges of second-degree murder and second-degree assault. During closing argument, the prosecutor asserted that the defendant did not meet the second requirement of the initial aggressor instruction—withdrawal from the encounter—by twice stating that he "did not run away."

¶ 6 A jury convicted the defendant of three counts involving extreme indifference murder as well as one count of second-degree assault.[3] On appeal, the court of appeals concluded that the trial court committed cumulative error by instructing the jury on the initial aggressor doctrine, which was requested by defense counsel; by allowing the prosecutor to emphasize the defendant's duty to retreat during closing argument; and by failing to instruct the jury that self-defense could be considered with respect to the crime of extreme indifference murder. The court of appeals relied on *People v. Stewart*, 55 P.3d 107, 119 (Colo.2002), holding that the attorney incompetence exception to the invited error doctrine permits plain error review of a defense-tendered instruction. *Gross,*

slip op. at 4–5. The court reversed the defendant's convictions, finding that the trial court's errors undermined the fundamental fairness of the trial. We granted the People's petition for certiorari review and now reverse.[4]

## II. Analysis

¶ 7 First, the defendant argues that the attorney incompetence exception to the invited error doctrine permits his appeal of a jury instruction requested by his own counsel. He asserts that the trial court erred by instructing the jury on the initial aggressor doctrine because there was insufficient evidence to support it; the giving of this instruction prejudiced him because it added the requirements that he withdraw from the encounter and that he communicate his intent to do so. Additionally, the defendant claims that the prosecutor's argument about the duty to retreat, a requirement of the initial aggressor instruction, exacerbated the prejudice of the instructional error. Finally, the defendant contends that the trial court erred by failing to instruct the jury that it could consider self-defense with respect to the crime of extreme indifference murder.

1. Instruction No. 18 stated:
   It is an affirmative defense to the crime of Murder in the Second Degree and Second Degree Assault that the defendant used physical force upon another person:
   1. in order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by the victim, and
   2. he used a degree of force which he reasonably believed to be necessary for that purpose.
2. The defense argued that sufficient evidence supported this instruction because the defendant approached the Madrids' vehicle first. The initial aggressor instruction, Instruction No. 20, stated:
   It is an affirmative defense to the crime of Murder in the Second Degree and Second Degree Assault that the defendant:
   1. was the initial aggressor, but
   2. withdrew from the encounter, and
   3. effectively communicated to the other person his intent to do so, and
   4. the other person nevertheless continued or threatened the use of unlawful physical force.
3. The defendant was convicted of one count of extreme indifference murder, two counts of at-

tempted extreme indifference murder, one count of second-degree assault, and two crime of violence counts. Because the jury convicted the defendant of the lead charges, no verdicts were returned on the lesser-included offenses. Although the defendant was charged with three counts involving extreme indifference murder, all three counts require the same culpable mental state, and we therefore refer to "the crime of extreme indifference murder" in the singular.

4. Specifically, we granted certiorari to consider:

   1. Whether the court of appeals erroneously applied the exception to the invited error doctrine in *People v. Stewart*, 55 P.3d 107 (Colo.2002), to permit plain error review of a defense-tendered instruction because it believed defense counsel's strategy was "incompetent."
   2. Whether the court of appeals erred in concluding that the trial court committed plain error in instructing the jury on the initial aggressor exception to self-defense.
   3. Whether the court of appeals erred in holding that the trial court committed plain error by not instructing the jury it could consider self-defense with respect to the charge of extreme indifference murder.

He argues that if this instruction had been given, then he could have argued that self-defense negated the element that the killing was done under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally. He maintains that the cumulative effect of these errors undermined the fundamental fairness of the trial itself and cast serious doubt on the reliability of the judgment.

### A. Review of Defense–Tendered Jury Instruction

■ ¶ 8 We first consider whether the attorney incompetence exception to the invited error doctrine permits plain error review of a defense-tendered instruction. Generally, the invited error doctrine precludes appellate review of errors created by a party. *People v. Zapata*, 779 P.2d 1307, 1309 (Colo.1989). We have long held that one "may not complain on appeal of an error that he has invited or injected into the case; he must abide the consequences of his acts." *Id.* In *Zapata*, we treated a defense-tendered instruction that arguably misstated the burden of proof as invited error. We declined to consider the defendant's argument on appeal that the trial court erred in giving the instruction. *Id.* Similarly, in *Gray v. People*, we did not consider the defendant's assertion of error as to an instruction tendered by the defense and objected to by the prosecution, stating, "[W]e cannot consider the trial court to be in error for giving an instruction demanded by the defense." 139 Colo. 583, 588, 342 P.2d 627, 630 (1959).

¶ 9 In *People v. Stewart*, we held that the invited error doctrine does not preclude appellate review of errors resulting from attorney incompetence. 55 P.3d at 119. In Stewart, the defendant faced multiple assault charges—including first-degree, second-degree, and vehicular assault—arising out of an incident in which he hit a pedestrian with his vehicle. *Id.* at 112. Defense counsel submitted a packet of proposed jury instructions, one of which identified intervening cause as an affirmative defense to vehicular assault. Defense counsel did not submit a similar instruction concerning intervening cause as

an affirmative defense to first- and second-degree assault. *Id.* at 118. The trial court instructed the jury accordingly. *Id.* On appeal, the defendant argued that the trial court erred by failing to instruct the jury sua sponte that intervening cause also constituted an affirmative defense to first- and second-degree assault. *Id.* at 119. We held that the error resulted from counsel's oversight, that the appeal was not precluded by the invited error doctrine, and that it was reviewable: "[w]here it appears that an error or omission in jury instructions is due to inadvertence or attorney incompetence, the reviewing court should apply the doctrine of plain error." *Id.* We distinguished such unintentional errors from strategic decisions: "[w]here, however, the omission is strategic, the invited error doctrine should be invoked." *Id.* Thus, we permitted plain error review of omissions resulting from inadvertence or attorney incompetence; yet at the same time, we cautioned that "[where] a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Id.* at 119–20. While *Stewart* allowed for review of inadvertent errors or omissions, it did not modify the long-standing proposition that a defendant cannot allege error where a trial court gives an instruction demanded by the defense. *See Gray*, 139 Colo. at 588, 342 P.2d at 630.

¶ 10 Here, the defendant sought to invoke the attorney incompetence exception to the invited error doctrine to obtain appellate review of the initial aggressor jury instruction requested by his own counsel. He argued that pursuant to *Stewart*, the invited error doctrine did not preclude his appeal because the error resulted from his attorney's incompetence. The court of appeals agreed, reasoning that because the defendant had "alleged that the error was due to attorney incompetence, the invited error doctrine [did] not preclude his appeal." *Gross*, slip op. at 7.

■ ¶ 11 We disagree. We previously held that a defendant cannot appeal a jury instruction demanded by his or her own counsel. *Gray*, 139 Colo. at 588, 342 P.2d at 630. At times, an evidentiary hearing may

be necessary to determine whether counsel's actions constitute strategic choices or inadvertent errors. *See Ardolino v. People,* 69 P.3d 73, 77 (Colo.2003). In this case, however, defense counsel argued affirmatively for the initial aggressor instruction despite opposition by the prosecution. The invited error doctrine bars precisely such an intentional, strategic decision. This is especially true where the prosecutor objected to the proposed instruction. If this court were to extend the attorney incompetence exception to deliberate, strategic acts by counsel, then trial courts would be required to evaluate the propriety of counsel's trial strategy to determine whether to give a requested instruction. Such a result would be an untenable burden because assessing counsel's strategy does not fall within the purview of the trial court. Instead, where counsel's trial strategy is arguably incompetent, it should be challenged on grounds of ineffective assistance of counsel under Crim. P. 35(c).

¶ 12 The invited error doctrine therefore prohibits the defendant from appealing the trial court's decision to give the initial aggressor instruction, and we do not consider whether the trial court erred by giving this instruction.

¶ 13 Similarly, during closing argument the prosecutor argued that the defendant did not withdraw from the encounter, the second aspect of the initial aggressor instruction, by twice stating that he "did not run away." The court of appeals concluded that because there was insufficient evidence to justify the initial aggressor instruction, there also was insufficient evidence to justify the prosecutor's comments on that instruction. *Gross,* slip op. at 12. We disagree. These comments—consistent with the long-established rule that counsel properly may comment on a jury instruction provided by the court—arose out of the same initial aggressor instruction requested by defense counsel. *See* Crim. P. 30. Hence, just as we do not consider whether the instruction constituted error, we also do not consider wheth-er the prosecutor's comments constituted error.[5]

## B. Self–Defense and Extreme Indifference Murder

¶ 14 We next consider whether the trial court committed plain error by failing to instruct the jury that it could consider self-defense with respect to the crime of extreme indifference murder. The trial court provided an affirmative self-defense instruction to the charges of second-degree murder and second-degree assault, as requested by defense counsel; however, defense counsel did not request such an instruction to the crime of extreme indifference murder. The defendant argues that the trial court erred by failing to instruct the jury that it could consider whether evidence of self-defense negated the element that the killing was done under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally. *See* § 18–3–102(1)(d), C.R.S. (2012).

¶ 15 The facts presented by the defendant support a self-defense instruction. The defendant testified that Mr. Madrid appeared hostile during the exchange; that he believed that Mr. Madrid reached for a weapon beneath the driver's seat; and that he could not see into the vehicle after Mrs. Madrid closed the passenger window. Furthermore, the defendant claimed that when he turned to walk away, the Madrids' truck began to roll toward him. The combination of these factors, the defendant testified, caused him to fear for his life and, in response, to fire his gun. If the jury believed that the defendant fired the gun out of self-defense, then one element of the crime of extreme indifference murder would have been negated. Where a defendant presents evidence of self-defense, a trial court must instruct the jury that it may consider the evidence to determine whether the self-defense negates the element that the killing was done under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life

---

5. The prosecutorial misconduct issue is encompassed by the certiorari question addressing the propriety of the initial aggressor instruction.

generally.[6] Hence, the defendant is legally entitled to such an instruction.[7] We conclude that the trial court should have instructed the jury that it could consider self-defense in this regard.

¶ 16 At trial, defense counsel did not request a self-defense instruction to the crime of extreme indifference murder—unlike the initial aggressor instruction, which counsel affirmatively requested as part of a trial strategy. Therefore, although the invited error doctrine precludes the defendant's appeal of the initial aggressor instruction, we conclude that the circumstances are different concerning his failure to request a self-defense instruction on the charges involving extreme indifference murder. No strategic advantage could have been gained by omitting this instruction. Hence, counsel's failure to request it was not a strategic decision but rather was an oversight or inadvertent omission. The failure to request this instruction falls under the attorney incompetence exception and does not invoke the invited error doctrine, and we permit the defendant to raise this issue on appeal. *See Stewart,* 55 P.3d at 119.

¶ 17 Thus, we consider whether the failure to instruct the jury on self-defense with respect to extreme indifference murder rises to the level of plain error. *See id.* (where an omission in jury instructions results from attorney incompetence, we review for plain error). Plain error occurs when, upon review of the entire record, a reviewing court "can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of convic-

tion." *Wilson v. People,* 743 P.2d 415, 420 (Colo. 1987).

¶ 18 The trial court instructed the jury on self-defense to second-degree assault but failed to instruct the jury on self-defense with respect to the crime of extreme indifference murder. These instructions involve two different types of defenses—notably, with different burdens of proof that the prosecution must satisfy. *See People v. Pickering,* 276 P.3d 553, 555 (Colo.2011) (discussing the differences between affirmative defenses and elemental traverses, in which evidence may negate an element of a charged crime). Self-defense is an affirmative defense to second-degree assault.[8] *Id.* Therefore, self-defense "effectively becomes an additional element" of the crime, and the prosecution must "prov[e] beyond a reasonable doubt that the affirmative defense is inapplicable." *Id.* In contrast, self-defense as it relates to the crime of extreme indifference murder may negate only one element of the charged act. With this type of defense, the prosecution is not required to disprove beyond a reasonable doubt that the defendant acted out of self-defense; instead, a jury "may consider the evidence" to determine whether the prosecution proved beyond a reasonable doubt that the killing was done under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally. *Id.* Hence, self-defense to second-degree assault requires a higher burden of proof for the prosecution; a lower burden is required for consideration of self-defense with respect to the crime of extreme indifference murder.

¶ 19 Turning to the facts of this case, all of the charges against the defendant—including

---

6. Section 18–1–704(4), C.R.S. (2012), states: "If the defendant presents evidence of self-defense, the court shall instruct the jury with a self-defense law instruction. The court shall instruct the jury that it may consider the evidence of self-defense in determining whether the defendant acted ... with extreme indifference...." Hence, self-defense is not an affirmative defense to extreme indifference murder. Rather, it is an "element-negating traverse." See *Riley v. People,* 266 P.3d 1089, 1093 (Colo.2011); see also *Candelaria v. People,* 148 P.3d 178, 182 (Colo. 2006) (explaining that, in *People v. Jefferson,* 748 P.2d 1223, 1232 (Colo.1988), "[w]e therefore construed the [language added in 1981] to proscribe killing acts of a particular description

rather than attempting to carve out a new or intermediate culpable mental state").

7. Of course, we note that although the defendant is entitled to the instruction, the jury decides whether the evidence supporting that instruction is credible.

8. Here, the defendant was charged and convicted under section 18–3–203(1)(b), C.R.S. (2012): "with intent to cause bodily injury to another person, he or she causes such an injury to any person by means of a deadly weapon." Self-defense is an affirmative defense to second-degree assault under this subsection.

second-degree assault and the three counts involving extreme indifference murder—arose from the same acts because he fired four consecutive shots into the cab of the Madrids' truck. The trial court instructed the jury that self-defense constituted an affirmative defense to the second-degree assault charge and instructed the jury that it was the prosecution's burden to disprove any affirmative self-defense beyond a reasonable doubt. The jury found the defendant guilty of second-degree assault, thereby finding that the prosecution disproved self-defense beyond a reasonable doubt. The guilty verdict necessarily required the jury to consider the evidence supporting the defendant's self-defense theory. By its verdict, the jury rejected the defendant's self-defense theory.

¶ 20 The omitted self-defense instruction would have allowed the jury to consider precisely the identical facts supporting self-defense to second-degree assault that it would have considered for self-defense with respect to extreme indifference murder. Had the self-defense instruction been given in relation to the crime of extreme indifference murder, it would have required the prosecution to satisfy a lower burden of proof than it had to meet for the crime of second-degree assault. The jury's rejection of self-defense on the second-degree assault charge necessarily establishes that it would have rejected this same defense to the crime of extreme indifference murder. On these facts, we conclude that the inclusion of the self-defense instruction as to the crime of extreme indifference murder would not have affected the verdict. We hold that the omission of the self-defense instruction in this case did not constitute plain error.

### III. Conclusion

¶ 21 For the foregoing reasons, we conclude that cumulative error did not occur in this case. Hence, we reverse the judgment of the court of appeals and return this case to that court for consideration of the two remaining issues that it did not previously address on appeal.